# THE SUPREME COURT

OF THE

## STATE OF ILLINOIS,

OF CASES ARGUED AT

### APRIL TERM, 1862, AT OTTAWA.

---

GEORGE BASS, Plaintiff in Error, *v.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Defendants in Error.

ERROR TO BUREAU.

Railroad Companies should, in the exercise of their functions, adopt such precautions as will prevent damage to the property of persons, by the escaping of fire from locomotives; and they may be guilty of negligence, and answerable therefor, if injury ensues from fire so escaping.

It is negligence in a railroad company, to permit vegetation to grow upon its right of way, so that cattle may be concealed from view.

THIS was an action on the case, brought by Bass; the declaration was substantially as follows:

First count sets out that on 3rd September, 1859, at said county, plaintiff was the owner of 300 bushels of wheat in stacks, on his farm in Berlin township. That defendant was then and there the owner of a railroad leading from Chicago to Burlington and Quincy, and running through plaintiff's said farm, and within forty rods of said wheat stacks. That defendant was also the owner of a strip of fifty feet of ground on

2

each side of railroad track ; that said strip of land nearest to
the said wheat stacks was, by defendant, suffered to be covered
with dry grass, which came in contact with stubble in adjacent
field of plaintiff, in which said wheat stacks were then stand-
ing. That defendant was also then the owner of a train of
cars and locomotive, in charge of the servants of defendant.
That said locomotive and cars were then and there moved
along said railroad in charge of said servants through plain-
tiff's said farm, and through the carelessness, negligence and
want of care of said servants, so having said engine in charge,
the fire was by them then and there suffered to communicate
from the said locomotive to the said dry grass, and from thence
to said stubble in the said field of the plaintiff, (in which said
wheat stacks then were,) and then and there whilst said fire
was yet burning in said grass and stubble, and before the same
had communicated to said stack, twenty other servants of de-
fendant, employed in repairing the track of said railroad, were
then on said strip of land very near to the said fire so burning
as aforesaid, and said last mentioned servants were then and
there notified that said fire was communicated from said loco-
motive, and were then and there requested to extinguish the
same, and save said wheat stacks from destruction by said fire.
That said last mentioned servants, from the time they were so
notified, could with little exertion have put out said fire, and
saved the said wheat stacks, and that it was then and there
their duty to have done so, yet the last named servants of de-
fendant, well knowing the premises, then and there carelessly
neglected and refused to extinguish the said fire, or to make any
effort thereto, but then and there carelessly and negligently suf-
fered the said fire to pursue its course through said grass and
stubble, and to communicate to said wheat stacks of the plain-
tiff, whereby the said wheat stacks were totally consumed, and
lost to the plaintiff.

The second count contains substantially all the allegations
contained in the said first count, with these additional aver-
ments : that immediately after said fire had communicated
from said locomotive to said dry grass and stubble, and whilst
said servants of defendant (in employ of defendant repairing

said railroad) were very near to said fire, and before the same had communicated to said wheat stacks, that one Belden (a neighbor of plaintiff,) then and there informed said servants that said fire had communicated from said locomotive, and that said plaintiff and his servants were away from home and did not know of said fire, and that said fire would burn said wheat stacks unless they (said servants) extinguished said fire. That from the force and proximity of said last mentioned servants, they could with little pains have extinguished the same and have saved said wheat, and that it was their duty to have done so. That said Belden was unable, by any personal effort of his own, or any assistance within his reach, to extinguish said fire or save said wheat stacks ; that he, said Belden, then and there requested said servants to extinguish the said fire and save the said stacks, but that they (said servants) although well knowing the premises, culpably and negligently permitted the said fire so communicated as aforesaid, to run through the said stubble to said wheat stacks of the plaintiff, whereby the same was destroyed, and totally lost to the plaintiff. The plaintiff further avers, that he was not, nor were his servants, then and there present, nor had he or his servants any knowledge of said fire until the same had communicated with his said wheat stacks.

The third count, after averring the situation of plaintiff's farm and wheat stacks, and defendant's railroad and strip of the right of way, as in the second count alleged, avers that it was then and there the duty of defendant to have kept the said strip or right of way where the same adjoined the stubble field of plaintiff, free from dry grass, etc., so that fire would not communicate from locomotives running on said railroad, to dry grass, etc., and through the same to the said stubble of the plaintiff, and thereby protect the property of the plaintiff; yet the defendant well knowing the premises, then and there omitted to do its duty in this behalf, and then and there negligently suffered said strip of land where the same adjoined the stubble field of plaintiff, to become foul with dry grass, and whilst a locomotive and train of cars in charge of the servants of defendant, were then and there being run

through the said farm of plaintiff on said railroad, the fire communicated from said locomotive to the said dry grass, and through the same to the plaintiff's said stubble, and from thence through said stubble to the plaintiff's said wheat stacks, whereby the same were consumed, and totally lost to the plaintiff, to the damage of the plaintiff of $300.

To this declaration was filed a demurrer, which was made general and special to each count. And for special demurrer to first count, the defendant assigns:

1. Not charged that it was negligence in defendant to suffer dry grass to be on their right of way, nor by reason of its being there the fire spread to the stubble.

2. That said first count shows negligence in plaintiff in suffering his stubble to come in contact with defendant's dry grass. That only for the stubble the stacks would not have been burned.

3. As to the other servants repairing track, said first count shows that fire was in plaintiff's stubble when said servants were there, and said count does not show that said servants had a right to go into plaintiff's field to put out the fire, or that defendant's agents had any knowledge of the origin of the fire.

4. For all that appears in said first count, defendant had a right to fire said grass.

5. That said count does not show whether the injury complained of was the fault of the servants in charge of the locomotive, or servants repairing the track, or both combined, or how fire escaped.

6. Same objections as above are made to each count.

The errors assigned are:

That the court erred in sustaining said demurrer to the plaintiff's declaration.

That said demurrer is made general and special to each count of said declaration, and it does not appear from said judgment, how, or to what extent said demurrer is sustained.

That the court erred in giving judgment for the defendant upon the said demurrer.

J. I. Taylor, for Plaintiff in Error.

Cited 3 Ohio Rep. 172; 2 Greenleaf's Ev. 515, § 627; 15 Conn. 124; 23 Penn. 373; Redfield on Railways, 357—559.

Walker, Van Arman & Dexter, for Defendant in Error.

I.   It appears from the declaration, that the defendant had something more than a mere easement over the strip of land on which its road was constructed. It was the absolute owner thereof.

It also appears from the declaration and from the charter of the defendant, of which the court takes judicial notice, that the company had authority to construct, maintain and operate with steam power over this strip of land, a railroad for the transportation of freight and passengers.

But when anything is granted, "all the means to obtain it and all the fruits and effects of it are granted also." Shepherd's Touchstone, 89; *Babcock* v. *Western R. R. Co.*, 7 Metc. 553.

"Authority to use a steam engine for the purpose of propelling cars upon a railroad, is an authority to make a noise, whether it awaken fear or not." *Mosier* v. *Utica & Sch. R. R. Co.*, 8 Barb. 427.

It has also been held that authority to run a steam engine is an authority to emit sparks therefrom. *Rood* v. *N. Y. & Erie R. R. Co.*, 18 Barb. 87.

II.   The company being in the lawful pursuit of its legitimate business, if a fire was communicated to the adjoining lands by fire or sparks from the engine, by which the plaintiff sustained damage, it was *damnum absque injuria*, and the company are not liable, unless it has been guilty of negligence.

If A. sets fire to his own fallow ground, as he may lawfully do, which communicates to and fires the woodland of B., no action can be sustained against A., unless he has been guilty of negligence. *Clark* v. *Foot*, 8 John. 421.

If a person's house get on fire without his fault, no action lies against him by a neighbor, whose is thereby consumed. For it is lawful for such person to have fire in his house. 3 Black. Com. 43; Noyes' Max. 44.

To hold that the company, under such circumstances, would be liable without proof of negligence, would be to make them assurers of all the property along the line of the road—a degree of liability which in this country or in England has never been charged upon railroad corporations. *Rood* v. *N. Y. & Erie R. R. Co.*, 18 Barb. 81; *Yenser* v. *Phil. & R. R. R. Co.*, 8 Barr. 366; *Aldridge* v. *Great West. R. R. Co.*, 3 Man. & Gr. 575.

III. The company in the use of its road and engine, then was held to the exercise of ordinary care and prudence only —such as every man is bound to exercise in the use of his property. See *Rood* v. *N. Y. & Erie R. R. Co.;* Pierce on R. R. Law, 312.

IV. To make the defendant responsible, therefore, for the alleged damage in the burning of the stacks, it was incumbent on the plaintiff—

1st. To prove upon the trial, and therefore to allege and show in his declaration, that he was guilty of no want of ordinary care, and that he took due precaution to guard his property against such an accident. For this principle, see *Aurora Branch R. R. Co.* v. *Grimes*, 13 Ill. 58; *Galena & Chicago Union R. R. Co.* v. *Jacobs*, 20 Ill. 488; *Dyer & Scott*, 16 Ill. 300; *Chicago & Mississippi R. R.* v. *Patchin*, 17 Ill. 198; *Great Western R. R. Co.* v. *Hamper*, 17 Ill. 131; *C. B. & Q. R. R. Co.* v. *Hazard*, 26 Ill.; Pierce on R. R. Law, 314, and cases there cited.

2nd. That the company was guilty of carelessness or negligence which caused the injury, and this must be alleged and proved.

This negligence will not be presumed from the setting of the fire, nor from the fact that the engine emitted sparks. *Yenser* v. *Phil. & Reed. R. R. Co.*, 8 Barr. 466; *Moskin* v. *V. & Sch. R. R. Co.*, 8 Barb.; Pierce on R. R. Law, 314; Redfield on Railways, 259.

But it must allege and show by the declaration, in what the negligence consists. 22 Barb. 619; 18 Maine, 32; 23 Penn. 373; 27 Penn. 99; 37 Maine, 92; 15 Conn. 124; 10 Iredell, 402.

BREESE, J.   This was an action on the case, against a railroad company for negligence.   First, in negligently and carelessly suffering the fire from the engine, while running upon their road, to be communicated to the dry grass on their right of way, and from that to the adjoining stubble of the plaintiff, and through that to his wheat stacks, by which they were fired and totally consumed, twenty servants of the defendants standing by, whilst the fire was raging, and before it reached the stacks, and being duly notified of the fact, and requested to extinquish the fire refused to do so, or to make any effort thereto, but suffered the fire to pursue its course and destroy the wheat stacks.   Second, that immediately after the fire had escaped from the engine to the dry grass and stubble, and whilst the servants of the defendant were very near to the fire, and before the fire had reached the wheat stacks, a neighbor of the plaintiff, one Belden, then and there informed those servants that the fire was communicated from the engine of the defendant, and that the plaintiff and his servants were absent from home, and had no knowledge of the fire, and that the fire would burn the plaintiff's wheat stacks unless they, the said servants, extinguished it, and that from their force and proximity to the fire, they could easily have extinguished the same and saved the wheat stacks, alleging that it was their duty so to have done.   That Belden, who gave the information to the defendant's servants, was unable by any personal effort of his own, or by any assistance within his reach, to extinguish the fire, requested these servants of the company to extinguish it, and save the stacks, but that they, well knowing the premises, culpably and negligently permitted the fire so communicated, to run its course through the stubble to the wheat stacks, whereby the same was destroyed and totally lost to the plaintiff; that neither he, the plaintiff, nor any of his servants, were present, or had any knowledge of the fire until it had communicated with his wheat stacks.   And Third, that it was the duty of the defendant to keep his right of way, when the same adjoined the stubble field of the plaintiff, free from dry grass, so that fire would not communicate from locomotives running on the road to dry grass, and through that to.

the plaintiff's stubble; but that the defendant, well knowing the premises, omittted to do its duty in this behalf, and then and there negligently suffered the strip of land where it adjoined the stubble field of the plaintiff, to become foul with dry grass, and whilst a locomotive and train of cars in charge of the defendant's servants were being run through the plain tiff's farm on the railroad, the fire communicated from the locomotive to this dry grass, and through it to the plaintiff's stubble, and thence through the stubble to the plaintiff's wheat stacks, whereby the same were consumed and totally lost to him.

There was a demurrer to the declaration, admitting all the facts alleged in it, and the question is presented, do they, or any of them, constitute a good cause of action? The question is an important one, not only to the railroad companies in this State, now become a great interest, but to the community at large, and it has received our most serious consideration.

Several of the States have statutes upon the subject of the liability of railroad companies for fires communicated by their engines, and their courts have established rules of decision, more or less stringent, as their views of justice and policy dictated. Whilst our legislature have provided for the recovery of damages for a death caused by the wrongful act, neglect or default of a railroad company, they have not provided for losses occasioned by fire, nor have any rules been established by this court upon the subject. This case is one of the first impression, and must be governed by the rules and principles of the common law, so far as they may be applicable to our condition.

The first question that arises is, does the mere fact of fire escaping from a locomotive, by which property is destroyed, imply negligence?

At an early period in the history of railroads, it was settled by the courts of Great Britain upon great consideration, that the fact of premises being fired by sparks emitted from a passing engine, was *prima facie* evidence of negligence on the part of the company, making it incumbent on them to show that proper precautions had been adopted by them, reasonably calculated to prevent such accidents.

Bass *v.* Chicago, Burlington and Quincy R. R. Co.

There seems to us great good sense in the remarks of Tindall, Ch. J., in the case of *Pigott* v. *Eastern Counties Railway Company*, 3 Common Bench Reports, 229. He said: "The defendants are a company entrusted by the legislature with an agent of an extremely dangerous and unruly character, for their own private and particular advantage; and the law requires of them that they shall, in the exercise of the rights and powers so conferred upon them, adopt such precautions as may reasonably prevent damage to the property of third persons, through or near which their railway passes. The evidence in this case was abundantly sufficient to show that the injury of which the plaintiff complains, was caused by the emission of sparks, or particles of ignited coke coming from one of the defendant's engines; and there was no proof of any precaution adopted by the company to avoid such a mischance. I therefore think the jury came to a right conclusion in finding that the company were guilty of negligence, and that the injury complained of was the result of such negligence."

A rule not so stringent as this, has been established by the courts of several States, based upon the principle, that as the business of railways is lawful, no presumption of negligence arises, merely from the fact of fire being communicated by their engines. The principle is, that the plaintiff must aver and prove the negligence of the defendant.

We think there is great justice in the English rule, and are inclined to adopt it as most conducive to the safety of property on our lines of railroad, extending as they do through vast prairies, filled, at certain seasons of the year, with dry grass of a highly inflammable nature. And we hold also, that it is negligence in a railroad company to suffer dry grass and rubbish to be upon their right of way, or permit vegetation of any kind to grow upon it to such a height and density as would conceal animals which might be upon it. It is their duty to keep their entire right of way well cleared and free from everything which might obstruct the driver's view and prevent the discovery of animals upon it, which, by being frightened by the noise of the engine, might suddenly come upon the track and throw off the train, occasioning thereby the loss of limb or life to passengers upon it.

Negligence ought to be implied from the escape of fire, and the onus should be upon the company against which an action is brought for such negligence, to show that all the most approved mechanical contrivances were used upon the engine to prevent its escape.   Locomotives in which wood is used for fuel, are liable to emit sparks, sometimes in great volume, and they are carried, in a windy day or night, a great distance. It is incumbent therefore, on the companies, to use the greatest precaution, so as to secure the engines against emitting sparks. If they send an element abroad, in a cultivated country, so destructive and devastating in its nature as fire, they ought to be responsible for the mischief it produces.   There is no hardship in this, nor in the other requirement, that they shall keep no combustible matter on their roadway, nor any vegetation whose height and thick growth might obstruct the view of the engine driver, for in the one case mechanical ingenuity has provided safeguards, and in the other, a few hours' labor, properly directed, can keep the track and road clear.

It is no answer to say that the plaintiff should have kept his stubble field clear of combustible matter.   There was no obligation on him to do so, for it is considered good farming, and is the uniform custom of the country, to suffer it to remain until the proper time arrives for turning it under by the plow; and it is also a very common custom, in this State, for farmers to stack their grain in the field in which it grew.   No negligence, then, can be imputed to the plaintiff in either of these respects.

But the case is greatly aggravated on the part of the defendant, by the facts so distinctly charged, that while the fire was in progress through the stubble field, twenty servants of the defendant were at hand who were notified the fire came from a locomotive of the defendant, and who were in a condition to arrest and extinguish it before it reached the stacks, and his servants were absent, without any knowledge of the disaster, and who were specially requested to interfere and extinguish the fire, they having the present ability to extinguish it, and which they refused to do.   The plea set up by the defendant for the refusal is so absurd as to be unworthy

of notice, any farther than to stamp it as unworthy of civilized and Christian men. They had no right, forsooth, to enter upon the premises for such a purpose! Has it come to this, that citizens of this community are not permitted to enter the premises of another, whose house or barn is on fire, to extinguish the flames? Is any license necessary for a purpose so benevolent? Would not savages, prompted by their own instincts, rush to the rescue of property so endangered? It is sad and humiliating to contemplate the fact, that employees of a railroad company, acting under a charter granted by this State, should be so lost to all the calls of benevolence and kindness—to all the common instincts of the most ordinary humanity, as to refuse to aid in extinguishing a fire, which their own employers, by their negligence, had originated, which threatened the destruction of valuable property, and which they had the power to prevent. We are shocked at the exhibition of such heartless, such criminal indifference, and can find no apology for it. The facts are admitted by the demurrer, and stand out in bold relief condemnatory of the defendant.

Railroad companies in some of the States maintain, at great expense, a regular, well drilled and efficient police along the line of their roads, through cultivated places, to protect the interests of property holders from injuries such as those described in this case. They feel and know, in the use of an element so destructive as fire, they ought to be bound to use the greatest precautions. What then shall be said of these men, who were on the spot of the fire, who refused to extinguish it, uninfluenced by their duty to their employers or by the common feelings of regard for the interests and property of another, which they should have manifested and through which they could have saved valuable property from total destruction? It presents a case which will not bear favorable examination, and stamps these men with disgrace and infamy, and for whose conduct the defendant ought to suffer.

We are of opinion the demurrer should have been overruled, as the declaration is good in form and substance, and makes out a *prima facie* case against the defendant. The judgment

of the court below is reversed, and the cause remanded, with liberty to the defendant to plead issuably.

CATON, C. J., AND WALKER, J. We do not believe the question of the duty of railroad companies to prevent the growth of weeds upon their track, is presented by this record, and decline giving any opinion upon that question.