## SPAULDING VS. THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

RAILROADS — NEGLIGENCE — ENGLISH STATUTES. (1–5.) *English statutes, when part of common law of this country.* (6–7.) *Liability of Railway Company for destruction of adjoining property by fire from its engines.* (8–11.) *Evidence as to negligence.* (12.) *Duty of defendant as to combustible material along its way.*

1. The statute, 6 Anne, ch. 3, sec. 6 (enacted in 1707), which declares that "no action shall be maintained against any person in whose house or chamber any fire shall accidentally begin," with the construction which makes it include fires caused by *negligence,* became and is a part of the common law of this country.

Spaulding vs. The Chicago and Northwestern Railway Company.

2. The rule that English statutes passed before the American revolution, and adapted to the circumstances of the colonists, are to be considered as a part of the common law of this country, is merely a general rule adopted for convenience, and is subject to exceptions.

3. Statutes enacted shortly before the revolution, and which were not in fact accepted and recognized as a part of the law of this country, are not now to be treated as such.

4. The statute, 14 Geo. III., ch. 78, sec. 86 (enacted in 1774), which declares that no action shall be maintained against any person " in whose house, chamber, stable, barn, or other building, or *on whose estate*, any fire shall accidentally begin," if understood to include fires caused by *negligence*, has never been received as a part of the common law of this country. But *quære* whether said statute has ever received that construction in England.

5. Even if said statute were to be so construed, and were a part of our law, *quære* whether it could properly be applied to cases of fires caused by railway engines passing along the railway company's track over the lands of other persons.

6. It is the settled law of this country that railway companies are liable for damages caused by fire to adjoining property owners in consequence of the negligent construction or management of their engines.

7. Such companies, in the construction of their engines, with a view to preventing damage by fire to the property of others, are bound to avail themselves of all discoveries which science has put within their reach, and which, under the circumstances, they can reasonably be expected to adopt.

8. It is the law of this state that where damage has been caused by the escape of fire from a railway engine, *the burden is upon the company* to show that due care and skill were employed in the construction and management of such engine. *Galpin v. Ch. & N.W. Railway Co.*, 19 Wis., 608.

9. The presumption of negligence from the mere escape of fire, however, may be rebutted by evidence showing with a *reasonable degree of certainty* that the company has done its duty in that particular; and the highest and clearest kind of evidence is not required.

10. Proof that the engines passing over the road were properly constructed and equipped, and were carefully inspected by a competent and skilful person as often as once in two days, and found to be in proper order, would seem to be sufficient, although it does not come down to the very moment when the fire escaped which caused the injury, and show that at that time there was no defect in the engine.

11. *Quære* whether, in such a state of the evidence, it was not error to refuse an instruction " that the evidence showed the engines to have been in

good order, properly constructed, and provided with all the usual appliances in use at the time the fire occurred."

12. On the trial of this cause it was assumed on both sides that the only or the usual and most practicable method for removing dry grass and other combustible materials, such as forest leaves accumulating on the right of way, was by burning. The injury complained of was caused by fire in the early spring, soon after the grass and leaves became dry, and there was evidence tending to show that owing to the direction and force of the winds, and to some peculiarities in the exposure at the point where the fire occurred, no reasonable and fair opportunity had been given for burning the grass, etc., at that point, though workmen had been engaged in burning off the right of way in both directions from that point. No other feasible means of removing the combustible material was shown by the testimony. *Held*, that it was error to refuse an instruction that "the defendant was not bound to burn the dry vegetation on any portion of its way, where, by reason of the direction and force of the wind, or other attendant circumstances, doing so would endanger its own property or that of others."

APPEAL from the Circuit Court for *Rock* County.

Action by *Spaulding* against the *Chicago and Northwestern Railway Company* to recover damages for injuries to plaintiff's woodlands by two fires alleged to have originated on defendant's right of way, by reason of an insufficient and unsafe locomotive, and by reason of defendant's having negligently allowed its right of way to become encumbered with dry vegetation and herbage in a combustible and dangerous condition. The answer denied all the material allegations of the complaint.

The evidence on the part of plaintiff tended to show that the fires were caused by defendant's locomotives, several witnesses testifying that they saw the fires a few minutes after the cars passed, though none of them actually saw them originate, or saw the sparks or coals escape from the locomotive. It was also proven on behalf of the plaintiff that the track of the fire was traced back to defendant's right of way, and within a foot of the track. Several of plaintiff's witnesses, however, testified on cross-examination that such fires frequently worked their way against the wind, especially if protected by an embank-

Spaulding vs. The Chicago and Northwestern Railway Company.

ment, as was the case where the fires in question were alleged to have originated.

Upon the close of plaintiff's testimony defendant moved a nonsuit, upon the ground, among other things, that plaintiff had failed to show that defendant's servants or engines had caused the fires, and that he had failed to show that either fire originated within defendant's right of way, which motion was denied.

In behalf of defendant it was proven that its locomotives were properly equipped and provided with the most approved devices for preventing the escape of sparks and fire, and that they were inspected by the foreman of the repair shop every other day, and that the locomotive supposed to have caused the fire was operated by an experienced engineer. It was also proven that people were in the habit of walking along defendant's track, and that fires had occurred on days when no locomotive had passed over the track; also that smoking cars were attached to passenger trains running over the road, and that passengers frequently threw lighted matches and cigar stumps out of the windows. It appeared that defendant was in the habit of burning over its right of way every spring as soon as the snow melted, to prevent damage to the fences and adjoining property. Portions of the right of way on either side of the point where the fire originated had been thus burnt off shortly before the fires, but owing to the peculiar situation of the point in question, and the direction of the winds, it had not been burned off.

Defendant again moved for a nonsuit upon the same grounds as before, which motion was again overruled. The instructions given by the court sufficiently appear in the opinion. Verdict for plaintiff, and judgment being entered in accordance therewith, defendant appealed.

*Pease & Ruger*, for appellant, argued, among other things, that the common law of England, as amended by act of parliament prior to our revolution, and modified by our state constitution and laws, is the common law of Wisconsin, so far as

applicable to our condition. *Coburn v. Harvey*, 18 Wis., 147; *Kellogg v. Chicago and Northwestern Railway*, 26 Wis., 223. The statute, 6 Anne, c. 3, § 6, enacted in 1707, 1 Black. Com., 431, providing that no action shall be maintained against any in whose house or chamber any fire shall accidently begin, being in force in this country at the time of the revolution and since, as part of our common law, sufficiently explains the absence of precedents for the recovery of damages in such cases; but as it does not extend to any others, they are still governed by the rule of the common law, "unless expressly excepted by subsequent statutory enactment." This fully disposes of the case at bar, since such cases are "expressly excepted by subsequent statutory enactment." The statute, 14 Geo. III., c. 78, § 86, ordains that : "no action, suit or process whatever shall be had against any person in whose house, chamber, stable, barn or other building, *or on whose estate* any fire shall, after the 24th day of June, 1774, accidentally begin, nor shall any recompense be made by such person for any damage thereby, any law, usage or custom to the contrary notwithstanding."[*]

This statute re-enacting and extending the scope of the statute, 6 Anne c. 3, was also adopted as a part of our common law. Inasmuch as there never was any liability for fires originating without negligence, it is evident that Blackstone was right in construing this statute as prohibiting a recovery for fires caused by the master's or servant's carelessness. 2. The burden was on the plaintiff to show negligence in the construction and management of defendant's engines, and the fact that a fire was discovered near the line of defendant's railway, within a few minutes after the passage of one of its trains, is not evidence of such negligence, conceding that the fire was communicated from an engine. *R. R. Co. v. Yeiser*, 8 Barr (Penn.), 366; *Turnpike Co. v. R. R. Co.*, 54 Pa. St., 349; *Burroughs v. R. R. Co.*, 15 Conn., 124; *Paramore v. R. R. Co.*, 31 Ind., 145;

_____

[*] Both statutes are recited in *Lansing v. Stone*, 37 Barb., 18.

*Rood v. R. R. Co.*, 18 Barb., 80; *Sheldon v. R. R. Co.*, 4 Kern., 224, opinion of Hubbard, J. ; *Field v. R. R. Co.*, 32 N. Y., 349; *Smith v. R. R. Co.*, 37 Mo., 294. In ordinary cases mere proof of an injury resulting from a lawful act does not authorize an inference of negligence, and in cases of this nature, where there is every incentive to the exercise of care, the same rule ought to apply. 3. The charge of the court authorizing the jury to find negligence from the bare fact of the presence of dry vegetation on defendant's right of way, irrespective of its extent or duration, or of the practicability of its removal was too broad.

Defendant's negligence should have been such, as to the particular property destroyed, as to be actionable. *Barron v. Eldredge*, 100 Mass., 460; *Kellogg v. Chicago and Northwestern R. R. Co., supra.* 4. It was impossible from the evidence to determine whether the fire originated within defendant's way, since the evidence favored either conclusion; at the most, the jury could only guess in determining this, and this the court erroneously permitted them to do. *Sheldon v. R. R. Co.*, 29 Barb., 227; *Smith v. R. R. Co.*, 37 Mo., 294, *supra.* If the fire originated beyond the way, plaintiff could only recover in case the engine was faulty or defective. *Vaughan v. R. R. Co.*, 5 Hurl. & N. 686.

*Cassoday & Merrill*, for respondent, argued, among other things, that if the English statutes referred to were in harmony with the common law as it then existed, the English courts should have given them the same construction; if in derogation of the common law they should have been strictly construed. In either case, it followed that the English courts, as well as the American, were bound to hold, as they have held, that those statutes did not materially, if at all, modify the common law. *Vaughan v. Menlove*, 3 Bing., N. C., 468; S. C., 4 Scott, 244; *Filliter v. Phippard*, 12 Q. B., 347; *Barnard v. Poor*, 21 Pick., 378. The fact that the statute of Geo. III. added to the statute of Anne the words "stables, barns, or other buildings," and followed these with the word "estate," indicated clearly that

the latter word applied only to estates of a like nature with those enumerated, it being a general rule that where general words in a statute follow an enumeration of particular cases, they are only applicable to cases akin to those enumerated. *United States v. Irwin,* 5 McLean, 178; *Edson-v. Hayden,* 20 Wis., 682.  2. It would have been error for the court to take from the jury the question of defendant's negligence as to the condition and management of its engines.  *Illinois Central R. R. Co. v. Mills,* 1 Chicago Legal News, 25; *Field v. New York Central R. R. Co.,* 32 N. Y., 339; *Sheldon v. H. R. R. Co.,* 4 Kern., 218; *Piggott v. Eastern Counties,* 54 Eng. Com. Law, 229; *Bass v. C. B. & Q. R. R. Co.,* 28 Ill., 9; *Bliss v. L. N. W. R. R. Co.,* 100 Eng. Com. Law, 88.

DIXON, C. J.   That the statute 6 Anne, c. 3, § 6, enacted in 1707, with the interpretation heretofore supposed to have been given to it in England in the time of Blackstone and before, is in force as part of the common law of this state, was assumed by this court in the case of *Kellogg v. The Chicago and Northwestern Railway Company,* 26 Wis., 223, 267, 272.   As will be seen by the reference, the words of that statute, " in whose house or chamber any fire shall *accidentally* begin," had been construed as if the statute read, " in whose house or chamber any fire shall *negligently* begin," thus exempting from liability, as Blackstone says, for the loss or damage sustained by others, the owner or occupant through whose negligence or through the negligence or carelessness of whose servants the fire was set, his own loss being regarded as sufficient punishment for such negligence. That statute, with the constructions o said to have been put upon it in England, at and long before the time of our revolution, has no doubt generally been considered as constituting a part of the common law of this state as it probably has of all or nearly all of the other states of the Union.   It was, as we have every reason to think, so looked upon as part of the law of the colonies before the revolution and during the period of their dependence upon the laws and constitutions of Great Britain.

But with respect to the other British statute upon which reliance is placed by the railway company here, and which was also enacted before the revolution, namely, the statute 14 Geo. III., c. 78, § 86, enacted in 1774, which enlarged the operation of the statute of Anne, by declaring " that no action, suit or process whatever, shall be had, maintained or prosecuted against any person in whose house, chamber, stable, barn or other building, or on whose estate any fire shall after the said twenty-fourth day of June, accidentally begin, nor shall any recompense be made by such person for any damage suffered thereby," it is more than doubtful whether any effect, indeed it seems quite clear that no effect can be given to it as a part of the common law of this country.   The rule fixing the period of our revolution as the time from which the English statutes and acts of parliament shall be considered as part of the common law of this country, or that those statutes enacted before that time and which were adapted to our condition and circumstances as a people, shall be so considered, is a general one adopted for convenience merely, and which should govern in the generality of cases, but not one intended to apply always and to all cases or to all statutes which may have been so enacted, without regard to any other facts or circumstances.   The fundamental idea represented by the rule and upon which it is based is, that those statutes which were so enacted and which were suited to the condition and circumstances of our colonial ancestors, had been received, acted upon and ratified by them as part of the jurisprudence and laws of the colonies before the separaration from the mother country, and which, upon the separation, the colonists took with them as the still continuing law, except where subsequently repealed or modified by positive legislative enactment.   This view of the reasons and grounds of the rule would seem to exclude the statute in question from the operation of it, since the same was enacted on the very eve of the revolution; and at a time when we know our ancestors, in their colonial state, could not have become familiar with, or have

ratified or adopted it, and at a time, too, when, as history shows, all or nearly all respect for British sovereignty and British laws or acts of parliament then being passed, was well nigh extinct throughout the colonies. That our ancestors did not, and could not have adopted and acted upon this statute as part of their laws before their independence, is, therefore, very certain. It is certain from a consideration of the time and circumstances under which the statute was enacted, and also from a consideration of the law as we know it to have been constantly understood and administered in this country since the revolution. As to the statute of Anne, we know that it, with the construction previously supposed to have been put upon it, has been generally understood and regarded as constituting a rule of our common law, because it has been expressly so adjudged in some cases, and because in all the history and records of our judicial proceedings there exists not a precedent, under circumstances where there might have been thousands, of an action or recovery contrary to the provisions of that statute as the same is alleged to have been understood in England, and was doubtless understood in the colonies before the revolution took place. But as to this statute of Geo. III., the history of our law shows clearly and beyond the possibility of question or doubt, that it never has been so understood or applied by the courts of this country. The cases are most numerous, and to be found in the courts of almost every state of the Union, as well as in the federal courts, where actions have been maintained and recoveries had against proprietors and occupants, on whose land or estate fires have been negligently set or negligently permitted to begin or spread so as to extend to and consume or cause injury to the property of others. In such cases it has been invariably held that the negligent party is answerable in damage for the losses of third persons so caused and sustained.

The foregoing observations have been made upon the supposition that the statute of Geo. III. has or should receive the same construction to relieve from liability for *negligence* which

the statute of Anne has been supposed to have received. We have seen, by the date of its enactment, that it had not and could not well have received any judicial construction by the courts of England, known to our ancestors during the continuance of their colonial relations, or before those relations ended. It did not in fact receive any such construction until the year 1847, more than seventy-three years after its enactment, when it came up for consideration before Lord Denman, C. J., in the Court of Queen's Bench, in the case of *Filliter v. Phippard*, 11 Adolph and El. N. S. (63 E. C. L. R.) 347, in which it was construed not to include cases of fire set or produced by negligence. The same statute or the kindred one, 14 Geo. III. c. 78., had been incidentally considered four years before in the High Court of Chancery, by Lord Lyndhurst, in the case of *Viscount Canterbury v. The Attorney General*, 1 Phillip's Ch. R., 306, 315, 320. And in the still earlier case decided in the Common Pleas, in 1837, *Vaughan v. Menlove*, 3 Bing. N. C., 468 (32 E. C. L. R., 208), S. C., 4 Scott's N. R., 244, it had been held that an action lay against a party for so negligently constructing a hay-rick on the extremity of his land, that in consequence of its spontaneous combustion his neighbor's house was burned down, but no reference whatever was made to any statute. The observations of Lord Denman in *Filliter v. Phippard* are such as to cast great doubt upon the correctness of the conclusion of Blackstone and others of high authority (Lord Lyndhurst *supra*), as to the proper construction and effect of the statute of Anne. He says it is true that, in strictness, the word *accidental* may be employed in contradistinction to wilful, and so the same fire might both begin accidentally and be the result of negligence ; but he also says and declares as in his opinion the true construction, that it may equally mean a fire produced by mere chance, or incapable of being traced to any cause, and so stand opposed to the negligence of either servants or masters. He holds that the statute does not apply to cases of fires produced by negligence. Now if the statute were applicable as a

rule of our common law, it would seem that we could only take it with the construction which has thus been given to it by the English courts. We have seen by the English cases cited and examined in *Kellogg's case* above, that the courts there have never for a moment thought of applying this statute so as to shield or protect railway companies from liability for losses caused by fires set through their negligence or want of proper care, or the negligence or want of care of their agents or servants. The question presented would seem to be one making peculiarly applicable the remarks of Chief Justice Marshall in *Elmendorf v. Taylor*, 10 Wheat., 159, that "no court in the universe, which professed to be governed by principle, would, we presume, undertake to say, that the courts of Great Britain or of France, or of any other nation, had misunderstood their own statutes, and therefore erect itself into a tribunal which should correct such misunderstanding."

And again, proceeding upon the supposition that the statute in question was a rule of our law, and that it did and was intended at the time of its enactment, to excuse negligence so that no action could be maintained, we should venture the suggestion with strong expectation that it would generally be assented to as correct, that the rule so enacted would be inapplicable to the case of a railway company. It would need no argument to show that railway engines, moving at the greatest velocity and conveying their fire through the length and breadth of the land, and which with the utmost precautions for the safety and protection of property, and with the obligation of great care imposed on their managers, are still very dangerous, were not within the contemplation of the framers of the statute. No such machinery was then known, nor was it invented and thus put to use until more than half a century after the act was passed. It would seem, therefore, to be a great stretch of construction to apply the statute to such a case. Hence, in no view we can take of these English statutes, do they seem to afford the slightest ground for relieving the railway company from responsibility

for the injurious consequences produced by its own negligence. The question whether negligence as to the construction and management of a locomotive is to be implied from the mere fact of fire having escaped from it by which property is destroyed, so as to cast the burden upon the company, of showing that it was properly constructed and properly managed, is one with respect to which there seems to be a clear and decided conflict of authority. The rule of the English courts and that of many of the American states, is that the burden of making this proof rests upon the company when property is thus shown to have been destroyed. *Aldridge v. The Great Western Railway Co.*, 3 Man. & Gr., 515 (42 E. C. L. R., 272); *Piggot v. Eastern Counties Railway Co.*, 3 Man., Gr. & Scott, 229 (54 E. C. L. R., 228); *Gibson v. The South Eastern Railway Co.*, 1 Foster & Finl., 23; *Ellis v. Ports. & Ral. R. R. Co.*, 2 Ind. Law R., 138; *Herring v. Wil. & Ral. R. R. Co.*, 10 id., 402; *Huyett v. Phil. & Read. R. R. Co.*, 23 Pa. St. R., 373; *Hull v. Sacramento Valley R. R. Co.*, 14 Cal., 387; *Bass v. Chicago, Burl. & Quincy R. R. Co.*, 28 Ill., 9; *Illinois Central R. R. Co. v. Mills*, 42 Ill., 407; *McGready v. Rail Road Co.*, 2 Strobh. Law R., 356; *Cleaveland v. Grand Trunk Railway Co.*, 42 Vt., 449; *Baltimore & Susquehanna R. R. Co. v. Woodruff*, 4 Md. R., 242. The reasons in support of this rule are well stated, among others, in the case of *The Illinois Central R. R. Co. v. Mills*. The law upon this subject is that the companies, in the construction of their engines, are bound not only to employ all due care and skill for the prevention of mischief arising to the property of others, by the emission of sparks or any other cause, but they are also bound to avail themselves of all the discoveries which science has put within their reach for that purpose, provided they are such as under the circumstances it is reasonable to require the companies to adopt. *Dimmock v. North Staffordshire Railway Co.*, 4 Foster and Finl., 1063. The reasons given for requiring the companies to show that this duty has been performed on their part, are that the agents and employees of the road know, or are at least bound to know, that

the engine is properly equipped to prevent fire from escaping, and that they know whether any mechanical contrivances were employed for that purpose, and if so, what was their character, whilst, on the other hand, persons not connected with the road and who only see trains passing at a high rate of speed, have no such means of information, and the same is inaccessible to and cannot be obtained by them without great trouble and expense, and then often only as a favor from the company, which, under the circumstances, the company would be very likely to with-hold. These considerations seem to this court to afford very clear and satisfactory grounds in support of the rule, and inasmuch as this court has sanctioned the principle, if not the very rule itself, in cases of this kind, in *Galpin v. The Chicago and Northwestern Railway Co.*, 19 Wis., 608, 609, we are not inclined to depart from such principle or to refuse our assent to the rule as held by the cases above referred to. The authorities in opposition to this rule are, it is admitted, quite numerous, and by most respectable judicial tribunals, but as this court cannot approve them, and as reference to them may be obtained from any elementary work of recent date, no further allusion is made to them here.

In the present case the railway company appears to have assumed the burden of showing that at and about the times the fires in question were communicated, its engines were properly equipped and provided with all the most modern and approved appliances for preventing the escape of sparks and fire. The testimony upon this subject was quite full, and, in the judgment of this court, quite satisfactory, if not conclusive, that there was no want of proper care or precaution in this respect on the part of the company. Counsel for the company asked an instruction to the effect that the evidence showed that the engines were in good order, properly constructed and provided with all the usual appliances in use at the time of the occurrence of the fires, etc., thus withdrawing that question from the consideration of the jury, which instruc-

Spaulding vs. The Chicago and Northwestern Railway Company.

tion the court refused to give. It seems to be supposed by counsel for the plaintff that the very utmost strictness of proof is required upon this point, coming down to the very moment when the fire escaped, and showing that at that time, there was no defect or want of repair in the engine, or otherwise the company does not rebut the presumption of negligence arising from the fact of fire having escaped. The proof in the case shows, and it is a truth attested by common experience, that by no means, which the ingenuity or cunning of man has yet been able to devise or discover, can the escape of sparks and coals of fire, under such circumstances, be entirely prevented. Some fire, under all circumstances and under even the best condition of the engine to prevent it, will sometimes escape. The presumption, therefore, of negligence or of the want of proper equipments, arising from the mere fact of fire having escaped, is not conclusive, nor, indeed, a very strong one, but, of the two, rather weak and unsatisfactory. It is indulged in merely for the purpose of putting the company to proof and compelling it to explain and show, with a reasonable and fair degree of certainty, not by the highest and most clear and unmistakable kind of evidence, that it had performed its duty in this particular. Hence, evidence showing that the engines passing over a road were properly constructed and equipped and were subjected to the vigilant and careful inspection of a competent and skillful person, as often as once in two days, and found to be in proper order, would seem to satisfy the requirements of the rule. In this case, therefore, were there no other question in it but upon the refusal of the instruction above referred to, we should have great hesitation in determining that the judgment ought not to be reversed on that ground.

The eleventh instruction or request to charge, asked by the company, was in these words: "The defendant was not bound to burn the dry vegetation on any portion of its way, when, by reason of the direction and force of the wind, or other attendant circumstances it would endanger its own property or the property

of others to do so." This request was refused and an exception taken. It seems to have been taken for granted on the trial below and in this court, that the only or the most practicable and usual method resorted to by railway companies to remove the dry grass and other combustible materials, such as forest leaves, etc., accumulating on the right of way, is, under the supervision of workmen, to burn them in the way on either side of the track, thus making a non-inflammable belt, the land on both sides being burned over, from the track to the fences or boundaries of the company's land on either side. To carry on this operation with safety, many things must be taken into account, and especially the course of the wind when that is blowing. The fire must be set to the windward of the track so that it will be carried in the direction of the track, which will operate to interrupt its passage, and not be taken in the direction of the adjoining fields on the side where set, from which mischief and the destruction of property might ensue. There was some evidence and enough, we think, to have carried the question to the jury, whether the failure of the company to remove in this way the dry grass and leaves from the place where the fire is shown to have been communicated, was or was not negligence or an omission of duty on its part for which it should be held to respond in damages to the plaintiff in this action. The duty of removing such inflammable materials from the way owned by the company, implies as of course that the company is to have reasonable time and opportunity for that purpose, if the accumulation of such materials be unavoidable, or if not suffered or caused by the neglect of the company. It appears that the fires here occurred in early spring and soon after the grass and leaves became dry and inflammable, and there was some evidence tending to show that, owing to the direction and force of the wind, which the witnesses say blew most of the time in the same direction, and owing also to some peculiarities of exposure at that point, it being upon the edge of some timber land which was covered with dry leaves, no

reasonable and fair opportunity had yet been afforded to the company or to the workmen in its employ, to burn off the way on that side of the railroad track. The testimony tended also to show that the workmen had been previously engaged, as time and opportunity were presented, in burning off the way in both directions from that point, but had not burned there for the reasons above stated. The testimony fails to show that there was any other fit or feasible means of removing the combustible materials than by burning, to which the company should have resorted when that method became impracticable. The testimony does not clearly show that no reasonable opportunity had been presented for burning at that place, but it tends to show that, and at the same time to show that it was a place more than ordinarily exposed to danger from fire, and which on that account should have received the earliest attention practicable on the part of the workmen and servants of the company. On the whole, we are of opinion that the testimony was such that it should have been submitted to the jury to say whether there was any negligence on the part of the company in this particular or not, and that the instruction under consideration should for this reason have been given. For this error the judgment must be reversed.

Several other questions have been raised and discussed by counsel in argument, but it is impossible for this court now to consider and determine them, although some of them might with propriety be so considered and determined. An interesting question touched in argument is that respecting negligence actual or contributory on the part of the land owner who suffers combustible materials like dry forest leaves to accumulate on his own land, which are forced and drifted by the wind upon the right of way of the company, and there set on fire, to his injury, or to the injury of the company or others. What the liability of the company may be with respect to such owner for injuries thus sustained by him, and what its obligation, with respect to him and to others whose property may in this

manner become exposed, to remove the inflammable substances so driven and carried upon its way, will be interesting questions when they arise, but it is unnecessary to consider them here. No question of the kind seems yet to have come up for adjudication, except that presented by the windrow of weeds and tickle grass in the case of *Brown v. Hann. & St. Joseph R. R. Co.*, 37 Mo., 288, 298, which involved a somewhat similar point.

*By the Court*—Judgment reversed and a *venire de novo* awarded.