Sneed, J.,
delivered the opinion of the Court.
The plaintiff brought this action to recover judgment for the alleged destruction by fire of her house and furniture on the night of the 15th of September, 1870, which she charges were ignited by sparks of fire from the locomotive engine of defendant. The value of the property shown to have been destroyed by the fire, including the building and furniture, and the clothing of herself and her minor children, was about $1,400. The verdict of the jury ascertained her damages to be $1,063, upon which judgment was pronounced, and an appeal in error taken by defendant.
The defendant is an incorporated railroad company, and had constructed its road some years before house of the plaintiff was erected. The building stood upon the south side of the defendant’s road, and distant about thirty yards therefrom. There is no positive testimony as to the fact of ignition, but the question was submitted to the jury upon the circumstantial evidence adduced, and they believed that the fire was occasioned in the manner charged, and have pronounced accordingly. It is shown that at 9:40 p. M., on the night of the fire, two freight trains passed the house of the plaintiff in the village of Hendersonville, and it was observed by persons in the vicinity, that large quantities of sparks were emitted from the smokestacks of the engines, which were borne upon a light wind in the direction of the plaintiff’s house. The building was of wood and roofed with cypress shingles. The family had retired and were asleep at the mo *456 ment the trains were passing. The plaintiff and her daughters, and others, tenants of the building, testify that there had been no fire upon the premises after six o’clock that evening, that but one candle had been lighted in the house that night, which, with the fire in the cooking stove, had been extinguished before the family had retired for the night. The plaintiff states that “ something after ten o’clock,” to use her own words, she was awakened by a noise as of “crackling timber” in the burning house, and upon running out she discovered the roof of the building nearest the railroad on fire, that she aroused the family, all of whom escaped, and that the house and nearly all its contents were rapidly consumed. It was shown, as already stated, that on the night in question, the engines of the defendant as they were passing the village, were ejecting a great quantity of sparks. It was also shown that one of the engines on that night was burning coal fuel and the other wood, and that the latter generated more sparks than the former. And over the objections of the defendant, it was also shown that on previous occasions other engines of the defendant had been seen to emit sparks which were borne much further on a light wind than the distance between the road and the plaintiff’s house, sometimes fifty yards, at others the length of a train of twenty cars, and that fences and grass along the way had now and then been ignited by the falling sparks. It was also shown that in the last half mile in the approach to the village in the direction the trains were going that night, there was an up-grade, and that the *457 emission of sparks was incessant by the increased labor of the engines upon an ascending grade. On behalf of the defendant, it was shown by the two engineers on the respective trains, that on passing the plaintiff’s house that night their smoke stacks were in good order, and that they were not emitting an unusual quantity of sparks. It was shown also that the engines drawing freight trains were only allowed to ply between the cities of Nashville and Bowling Green, and that upon the daily arrival of trains at Bowling Green, it was the unvarying rule of the company to have each engine run into the round-house for inspection, and for repairs if any should be necessary, and that no engine is permitted to start on another trip until it shall have been thus inspected.
The inspector testifies that on the evening of the 15th of September, 1870, before the two engines in question left Bowling Green for Nashville, he had carefully inspected the smoke-stack of each, and both were found to be in perfect order; that the locomotives used at that time by the defendant were of the best and most approved class, and only those with all the latest and best improvements attached were used. The smoke-stacks are described as being built with two stacks, an outer and an inner stack; over the inner stack is a cone against which sparks strike as they ascend and are thrown back. Above this cone, and covering the mouth of the outer stack, is a wire netting, known as a spark catcher. This is made very firm so as to prevent the escape of any large sparks. All the locomotives used by defendant *458 are constructed in this way. The two engines in question were carefully inspected by this witness before they started on their trip on the evening of the 15th of September, 1870. They were found to be in perfect order and provided with all the improvements mentioned to prevent injury or accident by fire. Upon cross-examination the witness stated that if the smoJce-staoks were right they could not throw out any sparlcs large enough to do damage, and that if they did emit sparlcs in immense quantities, it would be evidence that they were out of repair. It is shown that the smoke-stack of a locomotive is injured by long use, but the length of time the two engines in question had been in use is not stated; nor is the distance between Bowling Green and Hendersonville given. The master mechanic of the company testifies that it is impossible to construct an engine so as to prevent the escape of sparks. If it were done it would destroy the use of the engine, as then there would be no draught, and consequently the engine could not do its work; that some sparks will necessarily escape. He states that a wood-burner is more dangerous than a coal-burner; but in 1870 the supply of coal was not sufficient to enable the defendant to use coal altogether. He says that sparks from a smoke-stack would be carried on a light wind from fifty to one hundred yards; that he had heard of engines used in cities on street-cars from which sparks did not escape, but he never heard of one so constructed that it could be used upon an ordinary railroad, and that the smothering of the draught so as to *459 prevent entirely the escape of sparks would destroy the efficiency of the engine.
Upon this state of facts, the Court, among other things not excepted to, charged the jury as follows: “If you find from the testimony that the house of the plaintiff was burned, and that it was fired by a brand from a locomotive that was ' then being run upon defendant’s road, you will then look to the testimony and see whether the burning of the house resulted from the carelessness or negligence of the employees of defendant, and if so, your verdict should be for the plaintiff, and the measure of damages would be what it would cost in cash, at the time and place of the burning, to replace the house and each article consumed in it, with interest from that time to the present, if you think proper to allow interest. If the testimony shows that the defendant was running locomotives over it road so constructed as to let brands of large size escape, or if such locomotive was properly constructed, or constructed so as to prevent the escape from its smoke-stack of large brands when in good order, it was so much out of order as to permit the escape of brands that endangered buildings standing within the distance that plaintiff’s house stood from the road, and they continued to run such engine, notwithstanding the danger of setting buildings in the near vicinity of the road on fire, without repair, this would be such carelessness or negligence as would make the company liable for damages if any house should be fired by such locomotive under the circumstances just mentioned. On the other hand, if *460 you find from the testimony that the defendant procured for its road locomotives constructed with the latest improvements to prevent the escape of brands, and that it used such diligence and care in running such locomotives as a prudent man would about his own business and affairs, and brands did escape from such locomotives and set fire to the plaintiff’s house, under such circumstances the defendant would not be liable to the plaintiff, and your verdict will be for the defendant.
It appears that Mary Burke, the plaintiff’s daughter, was living with her mother; that she was a minor, and that her marriage was at hand. The bridal wardrobe purchased by her mother and presented to her, was destroyed in the building. Upon the subject of the plaintiff’s .right to recover in this action the value of her daughter’s clothing, the Court charged as follows: “If the testimony satisfies that Mary Burke, the daughter of the plaintiff, was under age, and was living with the plaintiff as a member of her family, and a part of the property consumed in the burning of the house was owned and claimed by her, she being a minor living with her mother, and subject to her orders and control, the plaintiff would have a right in this action to recover from the defendant the value of such articles.”
Among other instructions substantially given in the foregoing charge, the defendant requested the following,. which were not given: 1, “ If the plaintiff seeks to recover upon the ground of negligence, the burden of the proof of negligence lies on the plaintiff. 2d, *461 If the defendant had been in the habit of using wood in operating its road, and also using coal; and if the usual and approved inventions for preventing accidents by fire were adopted by the defendant in the construction of its engines and smoke-stacks, then the mere fact of the defendant using wood in running its engines instead of coal, would not be negligence, although the jury may believe that the use of coal is less dangerous than the use of wood. 3d, If the defendant built its road. and put the same in operation before plaintiff built her house, then she was bound to use reasonable care and caution, both in the construction of her house and the materials used, so as to prevent damage or loss by the proper use of defendant’s road; if such was not the case she could not recover.”
’With respect to the first proposition, — that if the plaintiff seeks to recover upon the ground of negligence, the burden of proof of negligence lies upon the plaintiff, the Court is of opinion that such is not the law as applicable to this kind of case. If the fact be made to appear that the plaintiff’s house was fired by sparks from the defendant’s engine, and that sparks in unusual and dangerous quantities were ejected from the engine on the occasion in question, it is peeuliarily within the power of the defendant to show that it was without fault or negligence of its own. It may be observed that in an action like this the law requires that “ the plaintiff must not only prove that the fire which destroyed her property might have proceeded from the defendant’s engine, but must show *462 beyond a reasonable doubt that it did so originate. Shearman & Redfield Neg., s. 333; Shelton v. Hudson River R. R. Co., 29 Bart., 226. The plaintiff in the latter case proved that his mill was sixty-seven feet from the railroad, and that in a little more than an hour after the passage of a locomotive emitting sparks, the mill was found to be on fire. This evidence was held to be insufficient. Smith v. Hannibal and St. Jo. R. R. Co., is to same effect. 37 Mo. 287. In Freemantto v. London and Northwestern R. Co., 10 C. B. 89, a verdict on such evidence was sustained. It is sufficient to say on this subject, that while in the absence of any positive proof of the means of ignition, a full conviction of the fact may be generated by circumstances, yet the fury must be careful not to base their verdict upon mere probabilities. The origin of the fire then being first proven, the burden is upon the' defendant to show that he used all necessary precaution to avoid such mischief. Shearman & Bedfield, Neg., 33; 28 Ill., 9; 42 Ill., 407; 3 C. B. 229; 2 Ired. Law, 138. This, says a learned writer, is the rule which is supported by the best authorities and which seems to be just. “ The natural presumption would be that by the use of ordinary care engines could be constructed so as to avoid such consequences, and if that is so, a presumption of negligence arises from their not being so constructed.” This rule, as to the burden of proof, says this Court, in Horne v. M. & O. R. Co., 1 Col., 75, was applied to railroad companies in Carjpue v. London and Brighton R. Co., 52 B. 747, and also in *463 Shinner v. London and Brighton R. Co., 2 Eng. Law and Eq. Rep., 360. So also Ellis v. Portsmouth and Roanoke R. Co., 2 Ired, 138, which latter case was one of damage to the plaintiff’s fence by a fire caused by a spark emitted from the defendant’s engine. In Christie v. Griggs, 2 Camp., 79, it was held that proof of injury to the plaintiff threw upon the defendant the burthen of showing that he exercised all the care which he was bound to do. 1 Col., 74, and it was said by Wright, J., in Horne v. M. and O. R. Co., that the statutory rule, that after it has been established by evidence on the part of the plaintiff that his stock has been killed or injured by the railroad company the onus “probandi is thrown upon the defendant, we do not understand it to be new, it is simply the announcement of a common law principle, 1 Col. 74, we hold therefore that the court below was not in error in withholding the instructions requested.
The second proposition, as to the character of the fuel used by the defendant, it seems to us, is given to the jury in a form more favorable to the defendant in that portion of the charge in which no mention is made of the subject of wood or cool as fuel, yet his Honor tells the jury that if the proof shows the defendant had procured for its road locomotives constructed with the latest improvements to prevent the escape of sparks, and that they used such diligence and care in running such locomotives as a prudent man would about his own business or affairs, and sparks did escape from such locomotives and set fire *464 to the plaintiff’s house, under such circumstances the defendant would not be liable to the plaintiff. This portion of the charge was exceedingly favorable to the defendant, and we are not inclined to suppose that the minds of the jury were much affected by the fact that the defendant was using upon one of its engines that night the most common and acceptable fuel of the country.
Upon the third proposition, we have only to say that the plaintiff, in building her house within thirty yards of the defendant’s road, had no right to anticipate any such degree of negligence on the part of the defendant in the exercise of its chartered privileges as would render this litigation necessary. But it has been expressly held that one is not precluded in such cases from a recovery by having placed his buildings in an exposed position. Coop v. Champ. Tram. Co., 1 Denio, 91-99-101; 1 Redf. Rail., 455.
Upon the question of evidence presented, it was held in England that it was proper evidence to go to the jury that the company’s engine had before in passing along the line emitted sparks a sufficient distance to have done the injury in that case, as a means of ascertaining the possibility of the building being fired in the manner alleged. The testimony in that case showed that the danger of emitting sparks is very much increased by overtasking the engine, and that it may be altogether avoided by shutting off the steam in passing a place where there is danger from sparks, or that the danger may be guarded against by mechanical precaution. 1 Redf. Rail., 454.
*465 But tbe failure to sbut off the steam on an upgrade would not of itself be negligence if thereby the locomotive itself would be prevented from making progress or seriously interfered with.
And in another case where it was claimed that no burning sparks could reach far enough to communicate the fire, it was held competent to show that the same engine using similar fuel emitted sparks reaching a greater distance. Ross v. Boston and Worcester R. R., 6 Allen, 87.
The company, say the Court, should use precaution to prevent fire escaping from their engines, or they will be responsible for the consequences. 28 Ill. R., 9. The proof in such case as to the emission of sparks at other times, is not adduced or allowable in the sense of the res gestee, but merely to illustrate the force with which engines may expel sparks from their smoke-stacks, and in this view we see no objection to it. Shear. & Redf. Neg., ss. 333, 380.
There are two other questions which we will briefly notice. It is said that the charge of the Court as to the proper measure of damages in this case is erroneous.
The Court charged the jury, that “the measure of damages would be just what it would cost in cash at the time and place of the burning to replace the house and each article consumed in it.” We think that this part of the charge was inaccurate, and calculated to produce confusion in the estimate of damages. The better instruction would be that the measure of damages would be the value of he property destroyed at *466 the time and place of the destruction. Vide Wylie v. Smitherman, 8 Ired., 236. Upon the last proposition necessary to be noticed, we have no question that it was proper in this case to allow the plaintiff to recover the value of the clothing of her minor children still dependent upon her and living with her. “ If there be no father, the mother is the head of the house, and entitled to the custody of the children, there being no testamentary guardian. She has, as natural guardian, a right to the custody of the person and care of the education of her children, and this in all countries, said Lord Hardwicke, when the laws do not break in.” Schouler’s Dom. Eel., 334. When a father furnishes his son with clothing, such clothing is the property of the father, and he may maintain an action for the loss and injury thereof. Ib., 349; Dickenson v. Winchester, 4 Cush., 114; Parmele v. Smith, 21 Ill., 620. In this case the clothing destroyed was bought and paid for by the plaintiff and given to the daughter, who was still a minor and under the control and protection of her mother. Though a few days might have changed her state and transferred to the husband the right of the mother, yet the event of marriage had not yet transpired, and she was still a member of the plaintiff’s family and a minor. We are of the opinion that there is no error in the instruction of the Circuit Court upon this question.
But, for the error indicated, the judgment is reversed and a new trial awarded.