WHITE v. THE PORT HURON & MILWAUKEE RAILWAY CO.

---

## Fortune C. White v. The Port Huron and Milwaukee Railway Company.

*Reforming contracts.* — A Court of Equity will not reform a contract by the addition of new provisions, which, it is claimed, were embraced in the understanding between the parties when such contract was made, where there is no allegation of fraud or mistake in drafting it.

*Enforcing forfeiture.* — Equity will not interfere to enforce a forfeiture, but, where such relief is sought, will leave the party complaining to his remedy elsewhere. *Crane v. Dayer,* 9 *Mich.,* 350.

Heard April 18.    Decided July 8.

WHITE v. THE PORT HURON & MILWAUKEE RAILWAY Co.

Appeal in Chancery from St. Clair Circuit:

The bill was brought to enforce an alleged forfeiture under a contract, and to cancel a deed claimed to have been improperly obtained. By the decree of the Court below, the deed was declared to be wholly inoperative and void. The defendant appealed.

The facts are sufficiently stated in the opinion.

*Conger, Harris & Farrand,* and *A. B. Maynard,* for complainant.

The evidence clearly shows that by accident or mistake, the agreement between the parties for a forfeiture was omitted from the original agreement, and it is within the power of equity to reform the original agreement in this respect. — *Gillespie v. Moon,* 2 *Johns. Ch. R.* 599; *Kesselbrack v. Livingston,* 4 *Id.* 144–5; *Willard's Eq. Ju., p.* 288–9; *Coles v. Bowne,* 10 *Paige,* 527; *Tilton v. Tilton,* 9 *N. H.,* 386; *Phyfe v. Wardell,* 2 *Ed. Ch. R.,* 47.

The objection that the bill does not directly allege the omission in the agreement of the forfeiture provision, to have happened through accident or mistake, cannot avail the defendants on final hearing, especially when the answer expressly denies that there was any agreement for a forfeiture. — *Sargent v. Byers,* 1 *Hemp.,* 114; *Bull v Bell,* 4 *Wis.,* 54; *Webber v. Gage,* 39 *N. H.,* 182.

*Theodore Romeyn,* for defendants.

1. The bill does not prevent the case of a mutual mistake of the parties in omitting from their agreement one of the provisions intended to be inserted; nor does it allege that there was such omission *by mistake or fraud.*

The general statement of the design of the parties to add the condition mentioned, without further specification, is not sufficient. — 1 *Story's Eq.,* §152 to §161; *Story's*

*Eq. Pl.*, §257; *Gresley's Eq. Ev.*, 158; 2 *Daniels Ch. Pr.*, 992; *Hall's Case*, 6 *Price's Eq.*, 240; *Underhill's Case*, 2 *Johns. Ch.*, 339; 2 *Story's Rep.*, 267 *and* 456.

2. It is inadmissible to defeat a specific sealed agreement for the sale of land, by parol testimony of a subsequent simple executory contract. — *Chitty on Con.*, *p.* 113; 2 *Cow. and H's Notes*, 987; 2 *Abbott's Dig.*, 99.

3. Equity will not enforce a forfeiture. — *Titus v. Minnesota Co.*, 8 *Mich.*, 257; 2 *Story's Eq.*, §1319–4; 4 *Johns. Ch.* 415; 11 *Paige*, 414.

CAMPBELL J.:

This was a suit in chancery, upon a bill filed by Fortune C. White, to obtain a decree to enforce an alleged forfeiture under a contract, and to restrain proceedings at law or in equity upon the agreement, and to cancel a deed claimed to have been improperly obtained.

The bill avers that on the 7th day of January, 1856, complainant, who owned certain lands in Port Huron, entered into a sealed agreement with defendants by their agent, E. H. Thompson, whereby he agreed to sell said land and *convey it at any time by warranty deed*, upon payment or tender of $25,000, of which $6,250 was payable in cash, in two semi-annual payments, at six and twelve months, and the remaining $18,750 was payable in full paid stock of the Company. There was a further covenant to convey, on payment or tender, and that the Company might enter at any time and hold until forfeiture. There was at the close of the contract a clause in these words: "This contract not to be binding on said White unless the building of said road shall so progress as to insure its completion as far as Lapeer within three years from this date." The contract contained no covenants except from complainant.

The bill further avers that at the time of making the contract it was further agreed and understood that, if the

railroad should not be finished at the time and in the manner set forth in the contract, the contract "should not only not be binding upon your orator, but the said Railway Company should forfeit all claims upon your orator for monies received from it under said contract, as well as all other claims whatsoever, which further agreement your orator alleges *it was then and there the design of the parties thereto to make one of the conditions and a part of said contract.*" It further alleges that the payments of money and stock were made promptly at the time required — the last payment of money and the transfer of stock being upon the 2d day of January, 1857. That on that day a further agreement was made, that complainant should execute a deed according to the written contract, and that it should be deposited in escrow with William T. Mitchell until the Company should, "*in pursuance of the further agreement not mentioned in said contract, but above set forth,*" execute and deliver to complainant a bond, conditioned that the said Company should complete such road to Lapeer on or before January 7th, 1859, and in default, the lands and the money payment should be forfeited to complainant. It then sets forth the deposit of the deed in escrow, the failure to give bond, the non-completion of the road, and also, that on or before the 30th day of July, 1857, the Company got possession of the deed, and recorded it without complainant's knowledge, and contrary to the agreement. The prayer was for a decree forfeiting all claim to the moneys paid, cancelling the deed, and enjoining all proceedings at law or in equity on the contracts, for the land or the money.

The bill does not aver that the written contract set out in it was in any way imperfect, or variant from what was agreed upon as to its terms. It does not aver that there was any mistake, nor does it ask that any mistake should be corrected. The testimony of James H. White

is that the agreement for forfeiture was directed to be inserted in the contract. The testimony of Edgar White is less positive, but has some tendency that way. Mr. Mitchell's testimony, which, on a point of this kind, is worthy of more reliance, shows that he knew of such an understanding, and does not speak of it as one which was to be embodied in the articles, but rather speaks of it as an after thought. From the whole tenor of his and Edgar White's testimony, it seems altogether more probable that it was a general conversation in which the expectations of the various parties as to the future were talked over, and not a solemn agreement supposed to be binding on the parties. This view is strengthened by the further consideration that express reference is made in the written contract to the contingency of failure to build the road; and the agreement on that point is directly in conflict with the one afterwards set up. The written contract left it at complainant's option to withdraw and cancel the agreement. The alleged verbal one allowed him to retain land and money both.

By the terms of the written contract, (which, in this respect, was inconsistent with the alleged verbal agreement,) the Company was entitled to demand a conveyance by warranty deed immediately on payment or tender of the consideration money. The forfeiture, if provided for at all, was to take place after three years should actually have expired, leaving the road unfinished to Lapeer. But White could withdraw from the contract before that time, if the road was not likely to be completed in reasonable probability. He had not, under either contract, as averred or proved, any right to refuse a conveyance when demanded, on full payment or tender of the purchase money and stock. He was clearly in default for not delivering a deed in January, 1857, unless the transactions then occurring varied the rights of the respective parties.

WHITE *v*. THE PORT HURON & MILWAUKEE· RAILWAY CO.

The verbal agreement or understanding, if actually existing, as had at the time when the first written contract was made, could be of no validity under the Statute of Frauds. It could only have been made material by showing a mistake and asking for its correction. Neither the bill nor the proof sustain this position, and that understanding cannot therefore be regarded as of any binding force, whatever may have been its terms.

It is averred and proved that when the payment was made and the deed demanded, the agent of complainant refused to execute it, except as an escrow, to be delivered when the Company should execute a bond providing for a ·complete forfeiture of land and money, in case the road should not be completed by January 7, 1859, to Lapeer. It is to enforce this forfeiture that the bill is filed. Assuming this agreement to have been made, and valid, equity will not interfere to enforce a forfeiture, but where such relief is sought, will leave the party complaining to such relief as he can obtain elsewhere. — *Crane v. Dwyer*, 9 *Mich. R.*, 350. But this agreement is not one which could be enforced if equity exercised such jurisdiction. It was wholly without any new consideration, and was also void under the Statute of Frauds. As a condition upon the deposit of a deed in escrow, it may have had a legal effect upon the delivery of the deed, and the moral character of the transaction by which the deed appears to have been surreptitiously obtained, must be regarded in that view. But as a foundation for any right to demand any forfeiture of money and land, it is of no validity whatever, and the rights of the parties must be governed by the only agreement in the case which complied with the statute.

The only relief to which complainant could be entitled in equity, must be dependent on his restoring the purchase price which he received. If he desires his land, he must return the price paid, which, by the contract,

13 MICH.—X.

was regarded as an equivalent. He was at liberty to retire from his agreement on those terms, and we are disposed to regard him as not having lost that right when the bill was filed, as no waiver was then insisted on. We are also of opinion that, under all the circumstances, a literal compliance would be sufficient, and that interest should not be allowed in this Court by way of damages on the money received by him. The contract allowing him to rescind it does not provide for interest, and whatever may have been the result in a suit at law for the non-fulfillment of his agreement to convey, (upon which we now express no opinion,) equity does not require such a condition to be imposed on his withdrawal for non-completion of the road.

We have had some doubts whether we could properly grant him relief at all, inasmuch as he prays a forfeiture; but as the bill sets out all the agreements, and shows his desire to withdraw from the agreement, and seeks general relief, we are disposed, instead of dismissing, to grant a decree that, upon re-payment by complainant to defendants of the purchase money and stock within a reasonable time, they be compelled to release the land and all further claims under the written agreement, and in default of such payment, that the bill be dismissed. The defendant will be entitled to the costs of this Court; but, in consideration of the fraudulent manner in which the deed was obtained from Mitchell's office, we shall leave each party to pay his own costs in the Court below. If complainant was technically in default for not conveying on demand, the remedy should have been sought by honest means, and not by stealth and fraud.

The decree below must be reversed with costs, and a new decree entered, directing that complainant have leave within forty days to reconvey the stock and refund the $6,250 received by him to defendants; and thereupon, that the defendants be decreed to reconvey the premises,

and to release all claims of every kind under the agreement, and be perpetually enjoined from setting up any claim thereafter to said land or under said agreement; and that, unless complainant comply with such condition, then his bill shall be dismissed. The case to be remanded for further proceedings to carry out this decree.

COOLEY and CHRISTIANCY JJ., concurred.

MARTIN Ch. J. dissenting:

So far as the bill of complaint in this case asks for a decree of forfeiture of all moneys paid by the defendant upon the contract for the purchase of the land mentioned in it, I agree with my brethren, that this Court cannot grant the prayer of the complainant. Courts of Equity never enforce forfeitures, but jurisdiction over this subject is left exclusively to the Courts of law, and is exercised by the latter with great reluctance, and only in clear and positive cases.

I do not perceive how we can grant any relief to the complainant under the pleadings and evidence in this case, except to order the deed which had been deposited with Mitchell in escrow to be delivered up to be cancelled, and the title re-invested in the complainant. In my view of the case, it becomes immaterial what was the written contract between the parties, or whether any subsequent verbal agreement was entered into respecting the subject matter of the written contract or the delivery of the deed, or whether such subsequent agreement was valid or void. It is beyond dispute that the deed was deposited with Mitchell by White in escrow, to be delivered to the defendant only upon the compliance by the latter with what White claims to be a valid agreement, and upon condition of its performance. This deed was surreptitiously obtained from Mitchell's possession, without his knowledge and without the authority or consent of

the complainant. It matters not that the complainant had obligated himself to execute and deliver a deed upon the performance by the defendant of his agreement, nor would it matter if such agreement had been fully performed according to the understanding of both parties, so that nothing remained to be done by the defendant; for as the deed was never delivered, nor left for delivery except upon condition of certain acts to be done by the defendant, which were not done, no title passed by the unlawful and fraudulent acquisition of such deed, and upon which the rights of the parties can or should be adjusted. It is, to my mind, a monstrous doctrine, that any possible right can be acquired by a deed obtained as this was by the defendant, or any right exist to be adjusted by a Court of Equity relative to a title thus obtained. The defendant can have no rights, or ask anything from the Court, until the deed shall be surrendered, and the parties restored to the condition in which they were before its fraudulent acquisition. I cannot regard the deed as valid for any purpose, nor consent to adjust equities where a deed thus obtained shall be in any wise recognized in such adjustment; and I do not think any principle can be discovered, or case found, where such a thing has been attempted before the present.

I think, therefore, that the complainant is entitled to a decree ordering the surrender of the deed to him to be cancelled, and such necessary conveyance from the defendant as may make his title good of record, and to his costs, and that adjustment of the rights and equities of the parties whereby any right or equity of the defendant shall be recognized, shall depend upon such surrender and re-conveyance, and a bill brought for such purpose after the defendant has restored to the complainant the title thus fraudulently and unlawfully acquired.