Maxwell, J.
On the trial of this cause in the court below, the plaintiff in error introduced testimony showing that its locomotives were properly constructed and were equipped with all the most approved appliances for the prevention of the escape of fire.
The court on its own motion instructed the jury that, “ In operating its road the railroad company, is expected and required to use the most approved machinery in use by railroad companies generally, to prevent the communication of fire to combustible materials along or in the vicinity of its track, and it is also required to employ competent and careful servants in the management of its engines to the same end. And if they fail to do so, and in consequence thereof a fire is kindled and property thereby burned, without any fault or negligence on the *273 part of the owner of such property, the company wonlcl be liable therefor. But on the other hand if the appliances on said engines are found by the jury to have been of the most approved kinds for the prevention of the escape of fire, and were operated in the usual and ordinary way by skillful hands, then, even although fire did escape and occasion damage to the plaintiff, he cannot recover on this ground alone. The presumption of negligence or want of proper equipments, arising from the fact that the fire escaped from the defendant’s engine, is not a very strong presumption, and is indulged in for the purpose of putting the defendant upon proof and compelling it to explain to a reasonable and fair degree of certainty, that it had performed its duty in this particular; and if you find that the engines from which the fire escaped were properly constructed and equipped, and were subjected to the careful inspection of a competent and skillful person as often as once in two days, and all defects discovered properly remedied, this would be all that in reason would seem to be required, so far as relates to the care which should be bestowed on the spark arrester.”
The defendant in the court below asked the court to instruct the jury that, “the evidence in this case shows that the engines of the defendant were in good order, properly constructed, and provided with all the usual appliances in use at the time of the occureiice of the fire to prevent the escape of fire from their engines and injuring adjacent property,” which the court refused to give, to which defendant excepted.
A railroad company has the right to use fire on its engines for the purpose of generating steam, and is not responsible for damages sustained by its proper use for that purpose, the law regarding such injuries as unavoidable; yet fire being an element of an exceedingly dangerous character, the law requires the company so using it, *274 to adopt such precautions as may reasonably be expected to prevent damage to the property of persons along its line. Piggott v. The East. Co. Railway, 3 C. B., 229.
As to what are reasonable precautions against the escape of fire, the courts almost without exception hold, that where engines are properly constructed and have all the appliances in general use for preventing the escape of fire, and there is no negligence in their management, the company will not be liable, as experience has shown that it is impossible at all times and under all circumstances to prevent the escape of fire from locomotives in such quanties as to occasion injury; but it has also been fully demonstrated that where engines are properly constructed and have the proper appliances for preventing the escape of fire, and are managed with care, they rarely occasion damage by setting out fire. This seems to have led the courts of England to adopt the rule, that when fire is set out by sparks emitted from an engine, it is prima fade evidence of negligence.
There is a direct conflict of authorities in this country on this question, in many of the cases, particularly the early ones, it being held that it devolved on the plaintiff to prove negligence on the part of the defendant. The better rule appears to be, where it is shown that a fire has originated from sparks thrown out by an engine, to require the company to show that their engine was properly constructed, equipped, and operated. The reason for the rule as stated in a late case in Wisconsin, being “ that the agents and employes of the road know, or are at least bound to know, that the engine is properly equipped to prevent fire from escaping, and that they know whether any mechanical contrivances were employed for that purpose, and if so, what was their character. Whilst on the other hand persons not connected with the road, and who only see trains passing at a high rate of speed, have no such means of information.” Spaulding v. C. &. N. W. R. R., 30 Wis., 122.
*275 “ The presumption of negligence arising from the fact that fire has been set out by sparks emitted from an ■engine, is not ordinarily a strong presumption. It is indulged in merely for the purpose of putting the company to proof, and compelling it to explain and show, with a reasonable degree of certainty, not by the highest and most clear and unmistakable kind of evidence, that it had performed its dirty in that particular.” Id., 30 Wis., 123.
The rule is well established, that when there is no conflict of testimony, and the existence of a fact is clearly proved by undisputed testimony, that it would be error to submit the question to a jury, as to whether that fact existed or not. It is therefore insisted that the court erred in refusing to give the instruction in question, asked by the plaintiff in error, there being it is claimed no conflict of testimony on that point. It is true, there is no direct testimony in regard to the character of the construction and appliances of the engines of the defendant in the court below, except that offered by the company. But a case of this kind differs, in many respects, from a case where the facts are equally within the knowledge of the plaintiff and defendant, such as the want of consideration of a note.
If in a suit on the note between the original parties, the defendant plead want of consideration, and introduced proof establishing that fact, if the plaintiff offered no proof he must fail, and there would be no question to submit to the jury.
In cases of this kind, however, the means of knowledge are entirely with the company. Witnesses are called on the stand, to testify in regard to the condition of an engine and its appliances, on a particular day, perhaps months before the trial. Under such circumstances, witnesses of the utmost reliability may be mistaken, and the circumstances connected with setting out the fire, *276 may be of such a character as to leave doubt, in the minds of the court and jury as to the correctness of their testimony. Under such circumstances the question of the credibility of the witnesses must be left to the jury. Suppose a man is on trial for murder, the evidence is purely circumstantial, but sufficient unexplained to convict; he avails himself of his right under our statute, to testify in his own behalf, and swears that the killing was done in self defense, and enters into a minute detail of the circumstances, and there is no rebutting testimony, will it be contended that the court must direct the prisoner’s discharge? Or must not the question of his credibility be submitted to the jury? Durant v. The People, 13 Mich., 356.
The question of the sufficiency of construction and equipment of the engines of the plaintiff in error, is a question of fact to be determined by the jury, from the direct and circumstantial evidence in the case, and is not a presumption of law to be determined by the court. There is, therefore, no error in refusing the instruction asked. In Spaulding v. The C. & N. W. R. R., 33 Wis., 582, a contrary doctrine is held on what we deem insufficient ground.
The defendant in the court below, asked the court to instruct the jury that, “If the jury believe from the evidence that the fire started within defendant’s right of way, and from the natural growth of grass and herbage on said right of way, this of itself is no evidence of negligence on the part of the defendant,” which the court refused to give, to which defendant excepted.
The court on its own motion had previously instructed the jury that, “If the jury find from the evidence in this case, that the defendant negligently and carelessly left dry grass or other combustible material upon their right of way at the point where the fire was set, and that the same was set by sparks or coals escaping from the *277 defendant’s engine, and that the same fire so kindled, spread or ran through the grass to the property of the plaintiff, shown to have been destroyed, without any negligence or carelessness on his part, then the jury should find a verdict for the plaintiff, for the amount of damages proven to have resulted from said fire, no matter whether the best appliances for the prevention of the escape of fire were used upon the engine which communicated the fire or not.”
In the trial of the cause in the court below, Albert T. Beecher testified that “there were weeds and grass right up to the ties; it caught close up to the ties; the grass was standing, it was dry and tolerably heavy; I did not notice any coals or cinders; I was between thirty and forty rods from the place, when the fire caught.”
It was agreed that the right of way at that point was two hundred feet in width.
The fact that a railroad company permitted dry grass and rubbish to remain on its right of way is one from which the jury may find negligence against the company, but is not necessarily so. That question seems to have been fairly submitted to the jury on the evidence, and we will not disturb their finding. . The instruction asked, was calculated to mislead the jury, and was properly refused.
It is contended by the plaintiff in error, that the damages proved are too remote; that there was no connection between the fire thrown out by the engine and the destruction of the property in question; that is, the act of setting fire to the grass on the right of way was not the immediate cause of the injury. It is shown by the testimony that a strong wind was blowing at the time the fire was set, that it spread rapidly from the place where it started' until it reached the property destroyed, that it was a continuous burning; the destruction of the property in controversy was therefore the *278 direct and natural result of the escape of fire from the engine. Clemens v. The H. & St. Jo. R. R., 53 Mo., 366. Kellogg v. The C. & N. W. R. R., 26 Wis., 230. A. T. & Santa Fe R. R. v. Stafford, 12 Kan., 354.
It is contended that the defendant in error was guilty of contributory negligence in not having fire-breaks plowed around his hedge, and straw ricks. The maxim of the law is “Sic utere tuo ut alienum non laedas,”— “Enjoy your property in such a manner as not to injure that of another person.” A railroad company has a perfect right to the full and free use of its own property and franchises, but upon what grounds can it impose conditions upon those owning property along its line, in order to shield itself from the negligent use of fire by the company, or its employes? All take the risk of injuries unavoidably produced by the use of fire for the purpose of generating steam, but upon what authority is any one to be deprived of the free and ordinary use of his property, in order to prevent its destruction by the negligent use his neighbor may make of his? We know of no such authority. Kellogg v. C. & N. W. R. R., 26 Wis., 231. Clemens v. H. & St. Jo. R. R., 53 Mo., 464. Cook, v. Champlain, 1 Denio, 91. Fero v. Buffalo, 22 N. Y., 209.
It is clearly the duty of a railroad company to take the necessary precautions to prevent the escape of fire from its engines; failing to do so, the question of its negligence will, under ordinary circumstances, be a question for the jury to determine.
It is unnecessary to further examine the case. After a full examination, we see no ei*ror of which the plaintiff in error can complain. The evidence would have justified a much larger verdict than that rendered in the case.
The judgment is affirmed.
Judgment affirmed.