MISSISSIPPI HOME INSURANCE CO. v. LOUISVILLE, NEW ORLEANS & TEXAS RAILWAY CO.

1. RAILROADS.  *Fires.  Contributory negligence.  Master and servant.*

In an action against a railway company to recover the value of a mill destroyed by fire, alleged to have been negligently set out by a locomotive, where it is shown that the employes of the mill were charged with the duty of extinguishing fires, it is not error to instruct that if, after discovering the fire, they could have extinguished it, but failed to use ordinary diligence in doing so, the plaintiff cannot recover.

2. SAME.  *Adjacent property.  Anticipating negligence.  Fires.*

An owner of property adjacent to a railroad, who uses it in a natural and ordinary way for purposes to which it is suited, is not called on to anticipate negligence on the part of the railway company, and his failure to so manage his property as to provide against danger from negligent emission of sparks by passing locomotives, is not contributory negligence.

3. DANGER OF FIRE.    *Use of adjacent property.    Right of owner.*

   Accordingly, it is error to refuse to instruct that a person owning property
   contiguous to a railroad has a right to continue to use the property after
   the railroad has been built *in the same manner as before*, if he takes reason-
   able care to prevent or extinguish fires.

4. RISK OF ADJACENT OWNER.    *Duty of company.    Degree of care.*

   On the other hand. in taking the land for the right of way, it is to be as-
   sumed that the owner was compensated for the enhanced danger from
   fire caused by the location of the track.    This includes the danger of
   fires accidentally, but not negligently, set out.    Therefore, in an action
   by such owner for the value of property destroyed by fire through the
   alleged negligence of the defendant, it is proper to refuse to instruct
   that the defendant is required to exercise the utmost care to prevent the
   escape of fire, and that the care should be determined by the situation
   and condition of plaintiff's property, and the method of conducting his
   business thereon.

5. SAME.    *Danger of fire.    Duty of company.    Use of property.*

   The duty of a railroad company is only to run its trains with reference to
   property along its line providently used by the owners thereof.    It is
   not bound to shut off steam, or otherwise increase precautions while
   · running, because the adjacent property owner carelessly exposes his
   property to fire.

6. FIRES.    *Absence of negligence.    Duty of company.*

   A railroad company is under no duty to contiguous owners to stop its train
   to extinguish fires which, without its fault or negligence, are set out by
   the locomotive.

7. RUNNING TRAINS.    *Speed.    Negligence.    Code 1880, ₴1407.*

   In an action for the value of property destroyed by the alleged negligence
   of defendant, where there is evidence that the train which set out the fire
   was running within an incorporated town more than six miles an hour,
   in violation of ₴ 1407, code 1880, an instruction for defendant is errone-
   ous which assumes to state the duties of defendant under the circum-
   stances, but is silent as to the presumption of negligence arising under
   said statute from the rate of speed, if found to be excessive.

8. SAME.    *Fires.    Definition of negligence.    Instruction.*

   In an action involving the alleged negligence of a railroad company in
   emitting sparks and burning adjacent property, the giving of an in-
   struction defining negligence, which, in effect, declares that the com-
   pany's servants are required only to act with regard to known circum-

stances, and ignores the fact that not knowing may itself be negligence, will not cause a reversal where the record discloses no material circumstances unknown to such servants, which it is their duty to know and act upon in managing the locomotive.

FROM the circuit court of Warren county.
HON. J. D. GILLAND, Judge.
The facts are stated in the opinion.

*Dabney & McCabe*, for appellant.

The first instruction asked was correct. It is the one approved in *Railway Co.* v. *Railroad Co.*, 67 Miss., 399. It was error for the court to burden it with a modification suggesting contributory negligence. It was error to modify the fifth instruction, which defines negligence, by requiring that the circumstances should be known to the defendant. It would have been amply sufficient if the defendant had reason to believe that these circumstances existed. Besides, if they did not know, they ought to have known.

The sixth instruction told the jury that the Spenglers might use their property as they had done before the railroad was built. It was error to modify it. Surely property owners have a right to continue to use their property in the same manner as before a railroad is built. They are not required to be deprived of the use of their property. The duty of the railroad company is to run its engines so as not to cause danger.

The modification of the seventh instruction is subject to the same objection, and the modification of the ninth is subject to the objection applicable to the change of the first.

It was error to refuse plaintiff's tenth instruction. Although one should, accidentally and without fault, put in motion that which may result in damage to others, it devolves upon him to make reasonable efforts to prevent such consequences. It was the duty of those in charge of the train, after discovering the fire, to stop the train and extinguish it. We admit that authorities, as to this, are not

agreed, but the weight and reason is in accordance with our view.   73 Texas, 117; 8 Am. & Eng. Enc. L., 3; *M. & O. R. R. Co.* v. *Gray*, 62 Miss., 383.

The defendant's sixth instruction undertakes to sum up the whole duty of the company under the circumstances. It ignores the fact that the degree of care must be proportionate to the danger.   That is a matter for the jury.   It ignores the fact that the wind was blowing from the locomotive toward combustible material; that the season was dry— all very material facts, throwing light on the question of negligence.   See 77 Ind., 110.

The giving of the seventh instruction was erroneous.   It was admitted that the fire was caused by the running of the locomotive.   So the instruction is directly in the face of the law that negligence is presumed.

The tenth instruction was irrelevant and misleading.   There was no evidence to justify the assumption by the court that if plaintiff had taken proper precaution the fire could have been extinguished.   The evidence showed that no effort could prevent the spread of the fire, even if the employes of the mill did not use entire presence of mind.   That could not have been expected of them under the circumstances. The best judgment is not to be expected in moments of sudden peril.

*Anderson & Russell,* on the same side.

It was the duty of the defendant to use the *utmost* care to prevent the emission of sparks and spreading of fire under the circumstances in evidence.   The degree of care required is always proportioned to the danger.   *R'y Co.* v. *P. L. Co.,* 9 So. Rep., 661; 11 L. Rep., An., 506, note *b.*   It was for the jury to say whether it was negligence not to shut off steam in passing the mill.

However carefully the company may have acted, after those in charge of the train saw the fire and had reason to believe it was from the engine, it was their duty to use due

·care to prevent its spreading.   Although a railroad company may lawfully burn its right of way, it may not carelessly permit the fire to spread to the property of others.   11 L. Rep., A., 506; 5 *Ib.*, 591;  110 Ind., 538; 124 *Ib.*, 275; 115 N. Y., 579; 73 Texas, 117.

It was not incumbent on the Spenglers to change the location of their mill because the railroad was built near it, nor to ·change their usual course of business.   They were not bound to watch passing trains, and prevent injury from flying sparks. We recognize that it was the duty of the mill employes to try to extinguish the fire, but we submit that there is no proof that they did not act with reasonable prudence under the sudden emergency and peril.

So far as the instructions for plaintiff, announcing the foregoing principles, were refused or modified, there was error.

*Miller, Smith & Hirsh*, for appellee.

The modification of the first instruction for plaintiff was correct.   Without it, the instruction would have conflicted with others.   Although an instruction in itself is abstractly correct, it should be made to harmonize with the others in the case.  *Railroad Company* v. *Kendrick*, 40 Miss., 375.   Besides this, the statute relied on to raise a presumption of negligence does not apply to a case such as this.   Plaintiff, without relying on the presumption, has shown the facts tending to prove the negligence.

The attempted definition of negligence, in the tenth instruction, is erroneous.   The court and counsel attempted to do what is next to impossible.   No two definitions are alike. See 16 Am. & Eng. Enc. L., "Negligence."   The one given by the court is rather a statement of what constitutes ordinary care, than a definition of negligence.

The sixth instruction was properly modified.   One conducting a business extremely susceptible to fire, should be required to take additional precautions when a perfectly lawful business is established near him, increasing the hazard.

He may use his property for the same purpose, but not *in the same manner.*

The insertion of the word "known" was proper, but, if not, the error was not prejudicial. No issue was raised by the evidence as to whether appellee knew or not of the dangerous condition of the premises.

The tenth instruction was rightly refused. It was not incumbent on the servants of the defendant to stop the train, and render any sort of assistance in putting out the fire. At the time, the train was moving at a rate of speed variously estimated from four to fifteen miles per hour. Before the train could have been stopped, the alarm had been responded to by all the employes.

Defendant's sixth instruction was based on *Howard* v. *Railway Company*, 66 Miss., 217, and the evidence made it proper.

The language of the seventh instruction is copied from the decision in *Hoff* v. *Railroad Company*, 45 N. J. L., 201. See also 30 Wis., 110; 39 Md., 251; 94 Ill., 448.

It was incumbent on the Spenglers to take precautions against the danger from sparks. They should not place inflammable material in dangerous proximity to the railroad. Ray on Neg. of Imposed Duties, 666; 61 Mo., 38; 29 Ga., 481; 5 Hum., 498; 29 Fed. Rep., 811; 94 Ill., 454; 45 Wis., 222; 22 N. Y., 209.

The case was tried with extraordinary care on the part of counsel and the court. The verdict is correct, and should be affirmed.

*Mayes & Harris*, on the same side.

There was no error in modifying appellant's instructions by inserting the qualification as to contributory negligence. It is claimed that undue prominence was thus given to the question of contributory negligence. But the evidence shows that there was contributory negligence, both in the management of the mill and in failing to extinguish the fire.

In the management of the mill, due care was not taken, in view of its location. The mill was on made soil, and the *debris* was very inflammable. Trains were run by it constantly, and ignitions were frequent, but no measures were taken to lessen the danger. The owners seemed satisfied with some small and ineffectual contrivances for putting out fires.

Again, if the employes of the mill had displayed any presence of mind or used even the appliances that had been prepared, the fire could easily have been extinguished. The fact that they forgot every thing, and became hysterical, is no excuse. It was for the jury to say whether they used due care.

The court might well have refused the fifth instruction, and it was not error to modify it by inserting the word "known." Abstract definitions should not be attempted. 16 Am. & Eng. Enc. L., 387. See *Railroad Company* v. *Minor*, 69 Miss., 710; 95 U. S., 439.

We submit that the modification of the sixth instruction was correct. The Spenglers were not required to abandon the purpose to which their mill was applied; but it did require them to alter their methods. There is a broad distinction between the rights of parties along the line of a railway in regard to natural deposits and those non-natural. They may not place the latter near the track, if dangerous. 45 Wis., 222. Moreover, it must be presumed that the necessity for altering methods was considered and allowed for when the right of way was condemned. 1 Greenl. on Ev., § 38; *Isom* v. *Railroad Company*, 36 Miss., 300; 6 Am. & Eng. Enc. L., 573.

There was no legal duty on the defendant to stop its train, and extinguish the fire, if not caused by its negligence. The indifference of its employes to a social duty merely, cannot render it liable. 26 Wis., 537; 70 Mo., 252; 39 Md., 251.

The sixth and seventh instructions for defendant are unobjectionable. They enumerate all the duties necessary to encounter ordinary risks. It was not necessary to shut off

steam in passing the mill, nor to guard against an ordinary wind, nor to abstain from stoking the fire or lubricating the engine. All the elements going to fix a negative liability are adverted to in these instructions.

COOPER, J., delivered the opinion of the court.

This suit was instituted by the administrators of S. Spengler to recover against the appellee damages for the loss of certain mills and machinery, sustained by the heirs of the intestate, resulting from a fire alleged to have been negligently set out by the servants of the defendant company. After the suit had been brought, the appellant, who had insured the property against loss by fire, paid to the administrators the amount of such insurance, and took an assignment of the right of action, and was admitted to prosecute the suit.

The evidence, so far as it is material to the consideration of the present appeal, may be thus stated:

More than twenty-five years ago the mills, for the destruction of which this suit is brought, were established in the northern part of the city of Vicksburg. The land upon which they were located was broken and irregular, and the dust, bark, shavings and other *debris* of the mills were deposited near them, forming, eventually, a deposit of from eight to eighteen feet. In the year 1883 the defendant company, either by agreement with the owners of the land or by condemnation proceedings, secured a right of way along a line to the west of the mills. The record does not disclose the width of the right of way, but it appears from the evidence that the eastern rail of the road is a little more than twenty-one feet from the spot on which the south-western corner of the building spoken of as the "shingling shed" was located. In preparing its way the company cut down through the deposit of dust, shavings and *debris* spoken of above, to a depth of some eleven to seventeen feet, at a point opposite the shingling shed, until the earth beneath was reached. It then drove down piles, and on these erected a trestle, on

which its track was laid. The descent of the land to the west was precipitous, and if we have correctly understood the evidence, which on this point is not very clear, the track of the defendant company was on a trestle some twelve to fifteen feet high, which trestle was on an excavated shelf cut along the declivity of the hill west of the mills, the rails of the road being nearly on a level with the surface of the ground which remained between the trestle and the mills. The deposit composing the made surface on which the plaintiff's mills stood, and through which the defendant company cut its way, became, when exposed to the sun and wind, very dry and inflammable. At the time of the fire it was in this condition on the side of the cut made by the defendant's road, and along the surface from the cut eastwards, and to the shingle shed. In the shingle shed the Spenglers had a machine for cutting shingles, and the shavings so cut were permitted by them to accumulate around the shed and on the ground between that building and the track of the railroad adjacent.

On the 29th of July, 1891, the mills and machinery were destroyed by fire, which fire the plaintiffs claim was set out by sparks or cinders which the servants of the defendant negligently permitted to escape from locomotive No. 74, which was at the time drawing a northward bound freight-train over defendant's road.

The evidence of the plaintiff tends to show that the fire was communicated from the engine by sparks, which fell near the shingling shed; that the weather had been for some time dry and hot, and the material along the space intervening between the mills and the road was in a very inflammable condition, as were such shavings as had accumulated around the shingling shed; that a wind was blowing from the south-west at the speed of from ten to twelve miles an hour, and carried the sparks escaping from the engine adjacent to and upon the buildings and shed above described; that the train was, at the time, being run at a high speed,

variously stated by the witnesses as from six to twenty miles
an hour; that the engine was exhausting heavily; that an
unusual quantity of sparks and cinders were being emitted—
one witness saying that they were as large as his vest-button,
and another that they were about the size of the end of his
little finger.   Several witnesses for the plaintiff say that
when the engine was passing along in front of the mills, the
fireman was engaged in stoking or coaling the engine, and
that this caused an unusual number of sparks to be emitted.
One witness for the plaintiff testified that immediately upon
the passing of the engine, he extinguished a fire, which was
beginning to burn at another spot on the Spenglers' property,
and which had been started by another spark from the en-
gine, and that, very soon thereafter, his attention was called
to the fire near the shingling mill, which spread with great
rapidity, and destroyed the mills.   Another witness stated
that a burning cinder was lodged on the top of the shed, but
did not burn, and that immediately afterwards the fire at the
shingling shed began to spread.   It is said by counsel for ap-
pellant that the wires of the spark-arrester used in engine
No. 74 had become worn by use to such an extent as to be
out of repair.   This part of the engine was exhibited to the
jury, and has been brought here for our inspection, but we
have not thought it important to examine it.

The plaintiff also proved that, at the rate of speed at which
the train was running in approaching the mill, the steam
might have been shut off entirely, and the train would, by
its momentum, have run by the mills, and that, so running,
no sparks would have been emitted; and also that the rule
of the company was that trains, in passing stations or cars
on which cotton was deposited or loaded, should, if practi-
cable, shut off steam; also that the wheels of the engine No.
74 slipped as it passed the mill, and that this was evidence
that it had on too much steam.

For the defendant, evidence was introduced tending to
prove that engine No. 74 was provided with all necessary

and proper appliances to prevent the escape of fire, and that the same were in good repair; that the servants of the defendant in charge of the engine were competent; that the fireman was not engaged about the fire when the engine was passing the mills, but was busy adjusting the lubricator of the engine, and that the engineer was overlooking the work, to see that it was properly done; that the rate of speed was not over nine miles an hour, and that the engine was under a light head of steam, and was working lightly; that the engine was not exhausting to an unusual or unnecessary extent, nor emitting in unusual quantity sparks and cinders, nor were those emitted of an unusual size.

The train drawn by this engine was shown to have been composed of thirty-six loaded cars, which was not an unusual number.    There were on the train three brakemen, the forward one being on the third car from the engine, the other about the middle of the train, and the third near the rear. Two of them and the conductor, who was in the caboose, saw the fire as the train passed.    The front brakeman said it appeared to be about the size of a barrel head, the one to the rear of the first. thought it was larger, and the conductor thought it was seven or eight feet in circumference.

On cross-examination of the witnesses for the plaintiff, it was shown that barrels of water were kept upon the mills and upon the ground adjacent to the buildings for use in extinguishing fires.    The manager of the mills, who first reached the fire, endeavored to extinguish it by smothering it out with shavings and other stuff, and, as he says, did not think of using water from some barrels which stood near by; but he also stated that the progress of the fire was so rapid that he would not have had time to bring and apply the water. This witness also stated that all of the employes about the mills were charged with the duty of watching for fires and extinguishing any which might occur.

It was shown generally by the witnesses that the material which had been for years deposited around the mills, and

through which the defendant cut in making its road-way, was of an inflammable nature when dried, and that, in the operation of the mills, the wagons used in and about its business passed along the strip between the mills and the railroad, and the material over which they passed, being crushed, soon dried out and became fuzzy and much more inflammable than before.

For the plaintiff, twelve instructions were asked. Nine of them were given, some with modifications, and three were rejected. So many of these instructions as it is important to consider are set out, and the modifications added by the court are set out in italics.

" 1. If the jury are satisfied, from the evidence in the cause, that the property mentioned in the declaration, or any of it, was destroyed by the act of the defendant, or its employes, in the running of its locomotive, the law presumes that the loss was occasioned by the want of reasonable care of defendant, and unless such presumption is rebutted by evidence in the cause, then the jury should find for the plaintiff, *unless it should further appear from the evidence that the Spengler heirs or employes were guilty of contributory negligence, as elsewhere explained.*"

" 4. If the jury believe, from the inspection of the wire netting used in engine No. 74 at the time the fire occurred, which has been produced by the defendant before the jury, *and from all the evidence in the case in relation thereto*, that the same was not in good order and repair at the time of the fire, but the meshes were enlarged by long use, whereby the sparks could be more easily emitted, and were, by reason of that fact, emitted, and set fire to the property in question, then they should find for the plaintiff, *unless the Spengler heirs or employes were guilty of such contributory negligence as to preclude plaintiff from recovery.*

" 5. Negligence is the failure to do what a reasonable and prudent person would do under the *known* circumstances of the situation, or the doing what such a person under *known*

existing circumstances would not have done. The essence of the fault may lie in the omission or commission. The degree of care to be exercised in a given case must be in proportion to the *known* apparent dangers of the situation.

"6. The jury are instructed that while a person using property contiguous to a railroad may not be reckless in its use in respect to dangers from fire, yet such person has the right to continue to use property, after a railroad has been built, *for the same purposes* as before, if reasonable care and precautions are taken to prevent and extinguish fires."

This instruction was modified by the court by striking out the words "in the same manner," and substituting therefor "for the same purposes."

The following instructions, asked by plaintiff, were refused:

"10. If the jury believe, from the evidence, that the fire was set by sparks from the defendant's engine, and the conductor and other employes on the train saw it, and knew, or had good reason to know, that it had been so started, then it was the duty of the defendant's employes to use every reasonable effort to extinguish such fire if it could have been thus accomplished. Defendant, though without negligence, in setting fire to the property of others, should not, with indifference to consequences, permit it to burn and destroy the property where it might be put out by reasonable efforts by its employes, and cannot, in such cases, afterwards justify itself upon the ground that there was no negligence in the original setting the fire, if it failed to use such efforts in a case where the fire might thus have been extinguished."

"11. The court instructs the jury that the defendant, in running its train by plaintiff's property, which was a wooden structure, and which had combustible material lying in and about the same, and which was very near to the defendant's railroad track, was required to exercise the utmost care to prevent the spread of fire from sparks emitted from its engine, and especially, if they believe from the evidence that, at the time said fire was communicated to said property, the

wind was blowing in the direction from the engine towards the property; that under such circumstances defendants were bound to exercise a greater degree of care than would be required of them in running trains in the country where there is no property near the track exposed to fire, and if, from the want of such care, fire, in large and unusual quantities, was permitted to escape from the engine upon plaintiff's property, whereby said property was consumed, the defendant is liable for the damages sustained.

"12. The court instructs the jury that the degree of care which is required of the defendant in running its trains is to be proportioned to the danger to be apprehended of inflicting injury on the person or property of others, and that the agent controlling the engine was bound to exercise the utmost vigilance while operating said engine by plaintiff's property in the city of Vicksburg; and, if they believe from the evidence, that from the faulty construction of the engine or from the want of proper appliances upon it to prevent the escape of sparks in large and dangerous quantities, or if, from the failure to have such appliances so adjusted or repaired as to prevent the escape of sparks in large and dangerous quantities, or from the negligent and unskillful management of the engine, or from the want of such care, the property of plaintiff was destroyed, the defendant is liable."

Among other instructions given for the defendant, were the following:

"6. If the jury should believe, from the evidence, that engine No. 74 was provided with the most approved appliances to prevent the emission of sparks, and that the same were in good order and repair, and that at the time she was passing Spengler's mills on July 29, 1891, she was in charge of a competent engineer and fireman, and that said engine had a light head of steam, and was working light, and that the fireman, Joe Dana, was adjusting the lubricator, and that the engineer, Jones, was watching him, then they will find a verdict for the defendant.

" 7. If the jury believe, from the evidence, that defendant's engine No. 74, with a train of cars attached, was run past Spengler's mills with a light head of steam, and that the engineer did not put on or use an excessive amount of steam, and that the fireman did not disturb the fire, and that said engine was in good order and repair, and was provided with a spark arrester of an approved pattern in general use and good repair, then they will find a verdict for the defendant, even though they may believe that the mills caught fire from sparks emitted from said engine.

" 9. The court instructs the jury for the defendant, that the law does not justify a person on leased grounds in the immediate vicinity of a railroad, and there carrying on the business of manufacturing shingles and lumber, which produce shavings and sawdust, to conduct such business with a reckless want of care; nor does it authorize said lessee to recover against the adjoining railway company for loss which the use of due care would have prevented; and if the jury believe, from the evidence, that the said Spengler heirs conducted a business of this kind, and that the fire could have been prevented by due and prudent care in carrying on said business on the part of those in their employ, then under no circumstances can they recover in this action.

" 11. The court instructs the jury for the defendant, that if Theobold, Buchanan and the other employes of Spengler, at or about the scene of the fire, could have put out the fire, after discovering it, by the exercise of reasonable diligence, and that they, or either of them, failed to exercise such reasonable diligence in putting out said fire, then they must find a verdict for the defendant."

The action of the court in modifying the first instruction for the plaintiff, must be considered in connection with the ninth and tenth instructions given for the defendant.

By the first instruction, the court was requested to charge the jury that, if the injury resulted from the negligence of the defendant, the plaintiff was entitled to recover. This in-

struction the court modified by adding the proviso, "unless it appears from the evidence that the Spenglers were guilty of contributory negligence, as elsewhere explained."    By the ninth and tenth instructions for the defendant, the court instructed what would constitute such contributory negligence.

The tenth instruction for the defendant told the jury that if Theobold, the general manager of the business of Spengler, or Buchanan and the other employes of Spengler, could have put out the fire after it was discovered, and that they, *or either of them*, failed to exercise reasonable diligence in putting out the fire, the plaintiff could not recover.

In consideration of the fact that Mr. Theobold, the general manager, testified that every employe had been charged with the duty of extinguishing fires, if any should occur, we find no fault with this instruction as announcing what would be contributory negligence.    We indicate the ground upon which it is sustained, in order that the instruction may not hereafter be invoked as a precedent for the rule that the negligence of an inferior or menial servant, charged with no duty and vested with no authority touching the preservation of the property of his principal, is to be imputed to the principal.

The ninth instruction for the defendant informed the jury that the plaintiff could not recover if the Spenglers were negligent in the method of conducting the business, and that "the fire could have been prevented by the exercise of due and prudent care in carrying on said business."

There is conflict in the decisions of the American courts, and this instruction finds support in many decided cases. The weight of authority, however, and the better reason, in our opinion, is that one who uses his land in a natural and ordinary way, for purposes to which it is suited, is not required to anticipate negligence by the adjacent railway company, and his failure so to manage his business as to protect his property from loss against such negligence is not contrib-

utory negligence on his part, which will prevent a recovery against the company.    8 Am. & Eng. Enc. L., 16, note 1.

In the case of *Salmon* v. *Delaware Railroad Co.*, 38 N. J. L , 5, Chief Justice Beasley, delivering the opinion of the court, said :

"A person is not called on to anticipate negligence on the part of another, and, by way of prevention, to make provision against its effects.   The fire in question, upon the facts stated in these pleadings, was caused solely by the illegal act of the defendant, and there is no provision of law which required the plaintiff to foresee the doing of such an act, and to put his own land in a situation to withstand its effect. He owed no duty to the defendant in this respect, and consequently negligence, in its legal sense, cannot be imputed to him. . . . I am aware that it has been ruled in Illinois that the owners of lands contiguous to railroads are as much bound to keep their lands free from dry grass and weeds as the railroad company is on its roadway, but I regard such cases as opposed to well-settled legal principles.   *Railroad Co.* v. *Shanefelt*, 47 Ill., 497 ; *Railroad Co.* v. *Frazier, Ib.*, 505 ; *Railroad Co.* v. *Nunn*, 51 Ill., 78.

" If this is the doctrine of the law, it is, I think, entirely manifest that the long line of decisions on the subject of careless use of fire by a proprietor on his own property, which we find in the books, have been rendered in utter disregard to this important condition.   The ruling of the courts has invariably been that every proprietor is responsible for the ordinary and natural consequences of the careless use of fire on his own premises, and this, without the least reference to the condition of the adjacent lands to which the conflagration has spread.   No support in any of these authorities can be found for the assumption that, if a land-owner places his stacks of grain or hay on the confines of his land, that thereby, in a legal point of view, he becomes a contributor to a fire occasioned by negligence on the land of his neighbor.   By such an act, it is true, he takes the risk of the con-

sequences of an accidental fire on the contiguous premises, but not of a neglect which he can be called upon either to anticipate or to guard against."

Among other cases in which the same rule is announced are *Railroad Company* v. *Hendrickson*, 80 Pa., 182; *Railroad Company* v. *Schultz*, 93 *Ib.*, 341; *Burlington Railroad* v. *Western*, 4 Neb., 268; *Railroad Company* v. *Medley*, 75 Va., 499; *Vaughan* v. *Railroad Company*, 3 H. & N., 427.

It follows, from what we have said, that it was error to modify the first instruction for the plaintiff, and to give the ninth for the defendant. For the same reason, the sixth instruction, as asked, was correct, and should have been given.

The modification of the fifth instruction for the plaintiff was probably made to exclude the conclusion that negligence should be predicated of the failure of the engineer to manage his engine with reference to the inflammable condition of the mills and their surroundings, unless the jury should believe that such condition was known to him. Definitions are dangerous things in all cases, from the difficulty of expressing accurately a short formula which shall include all principles intended to be included, and yet exclude all intended to be excluded. It is true ordinarily that, one charged with negligence is to be tried with reference to his conduct under the *known* circumstances of the situation in which he acted; but it may be that not knowing existing circumstances is itself negligence. The modification of this instruction was, in effect, to tell the jury that the servants of the defendant were not guilty of negligence in not knowing any of the unperceived or recognized circumstances of the situation. Ordinarily, this would be erroneous, as an instruction on the weight of testimony; but a careful review of the evidence in this cause, and an attentive reading of the briefs of counsel, suggest no unknown circumstance with reference to which it was the duty of the servants of the company to know and act in the management of the engine, as will appear hereafter when we come to consider the extent of the duty due from

the defendant to the Spenglers.  We would, however, observe
that a nice and discriminating accuracy in defining cannot
be required of trial judges acting on the moment, and with-
out access to the books.  The authors of the article on neg-
ligence in 16 Am. & Eng. Enc. L., page 389, give defini-
tions of that word by Alderson, Pollock, Britt, Judge
Swayne, Bishop, Smith, Austin, Wharton and Shearman &
Redfield, and cite some thirty decisions in which other defi-
nitions have been given, but construct a definition somewhat
different from all others.  They define actionable negligence
to be "the inadvertent failure of a legally responsible person
to use ordinary care, under the circumstances, in observing or
performing a non-contractual duty implied by law, which
failure is the proximate cause of injury to a person to whom
the duty is due."  It is probable that any one of the defini-
tions referred to in the article would be held sufficiently ac-
curate as an abstract proposition in an ordinary trial.  The
facts of an exceptional case might require any one of them
to be somewhat modified.

The tenth instruction for the plaintiff was properly refused.
If the rule contended for thereby, that railroad companies
are responsible for fires set out from their engines without
negligence, but the spreading of which might have been pre-
vented, exists under any circumstances, it certainly has no
application under any of the developed facts of this case.

Fires from running trains are always to be apprehended,
and if it is the duty of those in charge of a running train to
stop its progress to put out a fire set by the engine without
negligence, it would be equally their duty to see that all
sparks and cinders, from which danger from fire might rea-
sonably be anticipated, were extinguished.  If the company
is under a duty to extinguish non-negligently set fires when
known to exist, it must be under the same duty in reference
to such fires of the same character as the circumstances show
will or may probably spring up.  Under the principle of this
instruction, railroad companies would be responsible abso-

lutely for all fires set out by their engines, or would find immunity only upon condition of keeping constant and instant supervision over every foot of their road over which a train was passing, or had recently passed. It is manifest that the duty which these companies owe to the public, and which can only be discharged by running their trains upon schedules at stated intervals, could not be performed at all if the persons in charge of trains should be required to give their attention to fires along the way, and that the danger to life and property intrusted to them would be greatly increased by requiring trains to be stopped at all times and places, in order that the servants of the company may engage in putting out fires, whether the same be negligently or accidentally set out.

The sixth and seventh instructions for the defendant announce the proposition that if the engine by which the fire is claimed to have been set, was properly constructed and supplied with approved appliances to prevent the escape of fire, which were in good repair at the time, and that the engineer and fireman were competent, and ran the engine by the mills under a light head of steam, then the defendant had discharged its whole duty to the plaintiff's intestate, and no recovery could be had, even though the fire was set out from the engine.

The eleventh and twelfth instructions asked by the plaintiff, and which were refused, announced, in effect, the proposition that the defendant was required to exercise the utmost care to prevent the escape of fire from its engines, and that what this care should have been was determinable by the condition of the property of plaintiff's intestate, his method of conducting his business, the season of the year; the direction of the wind and the apparent danger of fire being communicated from the engine to the property situated and conditioned as it was at the time of the fire.

These instructions may be considered together, for they contain a fair exposition of the principles contended for by the parties respectively, the defendant asserting that if its

servants managed the engine as stated in the sixth and seventh instructions, it had performed its whole duty to the plaintiff's intestate, while the plaintiff's counsel insist that, even though the servants of the company had acted as stated in these instructions, *non constat* that they were not guilty of negligence in not acting with greater care and circumspection, and that the court should have refused these instructions for the defendant, and given the eleventh and twelfth asked by the plaintiff, in order that the jury might have determined whether, under all the circumstances, the requisite care had been taken to relieve the defendant from negligence. The plaintiff's counsel especially insist that the defendant was bound to increase its care in proportion to the danger in which the mills stood of taking fire from a moving train, even though that danger was caused, in whole or in part, by the business to which the property was devoted and the method in which the business was conducted; and they contend that it was the duty of the servants of the defendant in charge of the train to shut off steam from the engine, and permit the train to roll by the mills, by its momentum, if that could be done without unreasonably delaying the train, if, by so doing, the danger of fire would have been obviated.

We cannot agree with the contention of either party. The instructions for the defendant, now under consideration, were erroneous, for the reason that they did not exclude the imputation of negligence arising from the excessive rate of speed at which the train was running within the corporate limits, if it was so running. Section 1047, code 1880, provides that " any railroad company, having the right of way, may run locomotives and cars, by steam, through towns, cities and villages at the rate of six miles an hour, and no more; and if, in passing through any town, city or village, any locomotive or car should be run at a greater rate of speed, the company shall pay one hundred dollars, to be recovered by suit in the name of such town, city or village, and for its use; and the company shall, moreover, be liable for any damages or injury

which may be sustained by any one from such locomotive or cars whilst they are running at a greater rate of speed than six miles an hour through any city, town or village."

The instructions for the plaintiff were properly refused.

The plaintiff's intestate had been paid, we suppose, in the condemnation of the land, if it was condemned, or in its sale, if it was sold to the company, for the enhanced danger to their mills by the location of the track of the company. Whether, in fact, this was taken into consideration or not, we do not know; but it was a proper matter for consideration in the estimate of damages, and we must assume that it was compensated for in the sale or condemnation of the property. For all damage which might be done by accidental fires not negligently set out by the company, they have, in contemplation of law, been already paid. To get, first, damages for the land because such fires might occur, and then damages for the fire when it occurs, is to receive double compensation. So, also, to get compensation for land —as we must suppose was done—upon the theory that the trains would be run as trains usually are, and that, so running, a certain degree of danger from fire must exist, and then to compel the company to run its trains, not with reference to its business, but with reference to his, is to give the land-owner compensation for the use of the land, and then deny to the company the use for which it has paid. As we have said, the plaintiff's intestate was not bound, because the road had been located alongside his mills, to change his business or to act, in conducting it, with reference to a negligent use of its trains by the defendant; but the fact that he voluntarily continued to conduct the business in a manner which increased the danger from fire, could not impose on the defendant the obligation to so alter the management of its affairs as to afford him immunity from fires. So long as the company so ran its trains that negligence could not be imputed to it in reference to property along its line prudently used by its owners, it was exempt from liability; the plaint-

iff's intestate could not, by conducting his business in a careless manner, impose upon the company the additional burden of a greater care, made necessary by his own conduct.

There was no obligation on the defendant to shut off steam and permit its train to roll by the mills; we know from universal custom that trains are not so run. If the plaintiff's intestate had the right to have the trains so run by his mills, so, also, had every other property-owner who had placed his stacks of hay or grain, or other inflammable property, near enough the track to be equally endangered by running trains. True, one in charge of an engine must act in reference to the circumstances. It would be negligence for an engineer to empty his fire-box on a wooden bridge, or in a place in which unusual danger would be threatened by so doing; but this is because the fire-box may as well be emptied at other points, from which less danger would be threatened. But to hold that steam must be cut off in passing the property of the land-owner, or that the fires of the engine must not be replenished as occasion may require, because a slight wind is blowing towards his buildings, would be to deny the right of the company to transact its business in the usual and necessary manner.

As was said by Judge Campbell in *Michigan Central Railroad* v. *Anderson*, 20 Mich., 250, "vehicles that can choose their track, and can deviate whenever and wherever it is desired, may properly be required to be used differently, according to circumstances. But the necessity of running railroad cars with regularity and uniformity is not a matter of convenience merely. The business cannot be done at all, unless calculations are made upon the movement of trains. And the risks attendant upon a disturbance of that regularity are risks of human life, and not mere business delays. It would be not only vexatious, but in the highest degree dangerous to make the movement of trains vary with wind and weather. Those who establish themselves in the neighborhood of railroads, must know that the trains are expected to

run with regularity; and if there are special risks, arising from no want of care in the proper equipment and management of engines and trains, those risks are not chargeable to the railroad, but are incidents of the situation. And extra care, which they demand, must, therefore, devolve upon those whose interests require the increased vigilance, and the consequences of not exercising it, must fall upon the owner, because the railroad is not in fault."

We have hesitated to disturb the verdict in this case, notwithstanding the errors of law; but, in view of the fact that the evidence tends to prove that the train was being run in the limits of the city of Vicksburg at a rate 'of speed not allowed by law, which speed may have increased the danger of putting out fire from sparks and cinders, and also because. some of the testimony for the plaintiff, if believed by the jury, would show that sparks and cinders of unusual size and quantity, such as could not be emitted by an engine properly equipped, were emitted on the occasion of the fire, we are unable to say, with confidence, that no prejudice was done to the plaintiff by the errors noted.

*The judgment must be reversed, and a new trial awarded.*